[Civ. No. 3737. First Appellate District, Division One.—June 8, 1921.]

## ARAM MERZOIAN, Respondent, v. PETER PAPAZIAN, Appellant.

[1] BROKER'S COMMISSIONS—WHEN EARNED.—Before a broker can be said to have earned his commission he must have produced a purchaser ready, willing, and able to buy upon the terms set forth in the listing agreement.

[2] ID.—VARIATION OF TERMS—FAILURE TO REJECT OFFER—LIABILITY FOR COMMISSIONS.—Where an agent produces a purchaser ready, willing, and able to purchase substantially upon the authorized terms, and the vendor fails to reject the offer on the ground of its variance from the terms given the broker, such difference will be deemed assented to, and the broker will be entitled to his commission.

[3] ID.—PRODUCTION OF PURCHASER READY, ABLE, AND WILLING—EVIDENCE—FINDING.—Where the evidence shows that the vendor objected because the first payment, which was by check, was not as much as he specified in the listing agreement with the broker, and he demanded the full sum specified in gold, but there was evidence tending to show also that the purchaser was able to pay such sum, and offered to do so practically at once, saying, "Give me time to step out to the bank and I'll get the money for you," to which offer the defendant replied, "You need not go because I don't want to sell the property upon those terms anyway," the trial court was justified in finding that the purchaser produced by

———

1. When broker's commission is earned, notes, 28 **Am. St. Rep.** 546; 139 **Am. St. Rep.** 225; **Ann. Cas.** 1914D, 395.

2. Right of broker to commissions where he procures purchaser at price stated by his principal, but on slightly different terms in regard to cash or time of payment, and the owner refuses to consummate the sale, notes, 19 **Ann. Cas.** 1048; 21 **L. R. A. (N. S.)** 935.

the broker was ready, willing, and financially able to purchase upon the terms set forth in the listing agreement.

[4] ID.—INABILITY TO PROCURE LICENSE—RIGHT TO RECOVER COMMISSIONS.—It having been impossible for the plaintiff to procure a real estate broker's license as required by the statute of 1919 (Stats. 1919, p. 1252), the commission provided for by that act not having been appointed until two days after the breaking off of the negotiations between the defendant and the purchaser and that commission having been unable to establish an office, and in fact not having issued any licenses until about five months after its appointment, the fact that he did not have such license did not constitute a bar to the recovery of his commissions.

APPEAL from a judgment of the Superior Court of Fresno County. M. F. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ernest Klette and J. Geo. Ohannesian for Appellant.

G. L. Aynesworth for Respondent.

KERRIGAN, J.—This is an appeal from a judgment in favor of plaintiff in an action brought to recover a commission alleged to be due under a contract for the sale of real estate.

The contract was dated July 12, 1919, and it appoints the plaintiff as the exclusive agent of the defendant for the period of twenty days to sell the property described in the complaint, which consisted of sixty acres of land with improvements and certain personal property, for the sum of $40,000. By its terms the defendant was to "furnish deed and abstract showing clear title" in himself, and in the event of the plaintiff selling the property or being instrumental in bringing about a sale, he was to receive as his compensation five per cent of the purchase price. The terms of payment provided in said authorization were "$5,000 net cash, balance $3,000 out of 1919 crops, including interest, balance $1,500 per year and interest thereafter . . . interest 7 per cent."

Within the twenty days specified plaintiff procured a purchaser and entered into a contract with him, receiving

4. Failure to procure license as affecting broker's right to recover commission, notes, 5 Ann. Cas. 897; Ann. Cas. 1912D, 378.

from the purchaser $1,000 as a deposit and part payment on the purchase price of $40,000, payable $5,000 in cash twenty days after the execution of a good and sufficient contract of sale of said property, $3,000 on or before December 15, 1919, $1,500 on or before December 15, 1920, and a like amount on or before December 15th of each and every year' thereafter until complete payment of said price, with interest on all deferred payments from date of said offer at the rate of seven per cent per annum payable December 15, 1920, and annually thereafter.

[1] In respect to contracts with brokers to sell real property it is undoubtedly true that before the broker can be said to have earned his commission he must have produced a purchaser ready, willing, and able to buy upon the terms set forth in the listing agreement (9 Corpus Juris, 599). And defendant here contends that the terms of the offer procured by the plaintiff differ from those contained in his authorization in at least two essential respects, so that he was warranted in rejecting the offer.

It will be noticed that according to the listing agreement $5,000 net was to be paid on the execution and delivery of a sufficient contract of sale and purchase, $3,000 out of the 1919 crop, and balance at the rate of $1,500 ''per year and interest thereafter''; while the contract to purchase reads ''$3,000 on or before December 15, 1919; $1,500 on or before December 15, 1920, and $1,500 on or before December 15th of each and every year thereafter until the entire balance of said purchase price is paid, together with interest on all deferred payments from the date hereof at the rate of 7 per cent per annum payable December 15, 1920 and annually thereafter.'' It will also be observed that there is nothing in the listing contract authorizing the agent to give the purchaser ''twenty days to pay said sum of $5,000.'' As to the first of these claimed variances, it is apparent that the term ''crop season'' is indefinite as to time. It may possibly mean the period covered by the actual harvesting of the crop, and it may and probably does mean the point of time when the crop has been sold and paid for. This provision of the contract being indefinite, we are unable to say that there is any difference between the ''crop season'' of the year 1919 and December 15th of that year. With respect to the time of the pay-

ment of the yearly installments of $1,500, the listing agreement is ambiguous; but we are inclined to adopt the view of the trial court that such installments were to be paid yearly from the date of the $3,000 payment and not from the date of the contract of sale.

But granting that these asserted differences exist, still they are of no moment, for it clearly appears that the defendant did not object to the proffered contract on these grounds. [2] The rule is established in this state that where an agent produces a purchaser ready, willing, and able to purchase substantially upon the authorized terms, and the vendor fails to reject the offer on the ground of its variance from the terms given the broker, such difference will be deemed assented to, and the broker will be entitled to his commission. The rule of law applicable in this case is thus laid down in *California Land Security Co.* v. *Ritchie*, 40 Cal. App. 246, [180 Pac. 625]: "It has been held upon the soundest of reason that where property is sold by a broker to a purchaser able, ready, and willing to take and pay for the property, and any of the terms of the contract as to payment, abstract or deed are unsatisfactory to the intending vendor, the latter should object to them on that ground and not refuse absolutely to sell; and where he fails to make such objection under such circumstances he will be held liable to the broker negotiating the sale for his commission if he refuses to accept the purchaser."

[3] As to the third ground of objection to the contract, it is true that the plaintiff had no authority to give the purchaser twenty days within which to make the first payment of $5,000; and as to this variance the defendant did object. He refused to accept the $1,000 check offered to him, claiming that he was entitled to $5,000, and he demanded this sum in gold. But there is evidence tending to show that the purchaser was able to pay this sum, and offered to do so practically at once, saying, "Give me time to step out to the bank and I'll get the money for you." To this offer the defendant replied, "You need not go because I don't want to sell the property under those terms anyway." While the evidence is not strong, and appears to be subject to the criticism made of it by counsel for the defendant, we are constrained to hold that it is sufficient to sustain the

finding of the court to the effect that the purchaser produced by the plaintiff was ready and willing to purchase under the terms of the listing agreement. We are also satisfied from a careful examination of the evidence that it is sufficient to support the finding of the court that the proposed purchaser was financially able to make the purchase.

[4] Finally, the defendant challenges the right of the plaintiff to maintain this action for the reason that the plaintiff had not at the time of this sale procured a real estate broker's license as required by the statute of 1919 (Stats. 1919, p. 1259, sec. 20). It is conceded by defendant that the commission provided for by that act was not appointed until two days after the breaking off of the negotiations between the defendant and the purchaser. It further appears that the constitutionality of the act was questioned by the state comptroller, and for this reason the commission was unable to establish an office, and it in fact issued no licenses until about five months after its appointment. Under these circumstances it is manifest that it was impossible for the plaintiff to have procured a license at the time of this transaction—which deprives this objection of the appellant of any force.

It follows from what we have said that the judgment should be affirmed, and it is so ordered.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1921.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.