**John Lucas et al., copartners, trading as Lucas & Flynn, Appellants, v. Jeneatte S. Adomaitis et al., Appellees.**

### Gen. No. 29,259.

1. BROKERS—*compliance with license requirement as vesting rights thereunder without issuance of certificate.* Where one desiring to become a real estate broker complies with all the statute demands of him he cannot be deprived of the rights which he thereby obtains by the delay of the State Department in furnishing the certificate.

2. BROKERS—*admissibility of evidence of compliance with licensing requirements in action for commissions.* In a suit to recover a commission as a real estate broker where compliance with the license law was necessary to recovery, the court was in error in excluding evidence that plaintiffs had made application for a license and paid the required fee but had not received the certificate because of delay in the State Department.

Appeal by plaintiffs from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Reversed and remanded. Opinion filed February 11, 1925.

THOMAS J. YOUNG, for appellants.

WILLIAM A. ROGAN, for appellees.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On May 13, 1922, the plaintiffs, Lucas & Flynn, brought suit against the defendants, Jeneatte S. and Paul Adomaitis, for $350 for obtaining a purchaser for certain real estate belonging to the defendants. It is the theory of the plaintiffs that they furnished one Stulper, who entered into a written contract with the defendants to purchase the property in question for $13,500; and that at that time the defendants promised to pay them $350 for making the sale; that, subsequently, the defendants rescinded their contract with Stulper and have refused to pay them for their services. It is the theory of the defendants that, although a contract of sale was entered into, the plaintiffs were to be paid $350 only if the sale was actually consummated; and that as it was rescinded, there is no liability.

The case came up for trial and, the defendants not appearing, there was a verdict and judgment for the plaintiffs in the sum of $350. Subsequently, on motion of the defendants, that judgment was vacated. There was another trial with a jury, and a directed verdict at the close of the plaintiffs' evidence and judgment for the defendants that the plaintiffs take nothing by their suit. This appeal is therefrom.

The record shows that the plaintiffs proved that they were entitled to $350, pursuant to their contract which they had carried out, provided they had complied with the requirements of chapter 17a, Cahill's St. 1923, entitled, "Brokers." The trial judge directed a verdict for the defendants on the sole ground that the plaintiffs did not show that they had complied with the statute. The statute is in relation to the definition, registration and regulation of real estate brokers and real estate salesmen. It became in force July 1, 1921. Section 1 provides: "That on and after January 1, 1922, it shall be unlawful for any person to act as a real estate broker or real estate salesman, * * * without a certificate of regis-

tration issued by the Department of Registration and Education.''

Section 3 provides that any one who desires to obtain a certificate of registration shall apply to the Department of Registration and Education in writing, upon blanks prepared and furnished by said department. It also provides that that department is vested with the power and authority to make, prescribe and enforce any and all such reasonable rules and regulations connected with the application for any certificate as shall be deemed necessary.

Section 4 provides for the issuance by the department to each applicant a certificate of registration showing the name and address of the applicant.

Section 6 provides that the original registration fee for each real estate broker's certificate of registration shall be $10, and the annual renewal fee shall be $5.

Section 16 provides that any one violating the provisions of the Act shall, upon conviction thereof, be punished by a fine of not less than $100, nor to exceed the sum of $2,000, or by imprisonment for a term not to exceed two years, or by both such fine and imprisonment, in the discretion of the court.

In the course of the trial the plaintiffs introduced in evidence a broker's license, issued by the City of Chicago, on January 7, 1922, to Lucas & Flynn, the plaintiffs. Counsel for the plaintiffs then undertook to introduce in evidence a canceled check dated January 17, 1922, signed, ''John Lucas and Paul Flynn,'' addressed to ''W. H. H. Miller, Director,'' for $10, in order to show that the plaintiffs had paid the State Department of Illinois for a certificate. That was objected to by counsel for the defendants on the ground that it was incompetent, and that they had pleaded that they were licensed brokers. There was then a colloquy between counsel and the court, and a holding by the latter that the evidence offered was

inadmissible, the trial judge being of the opinion that it was necessary for the plaintiffs to show that they actually possessed a certificate of registration.

The plaintiffs then made a formal offer to prove the following facts: That on January 6, 1922, the plaintiffs, through their counsel, wrote to the Department of Registration and Education requesting them to send the plaintiffs the necessary forms of application for registration; that thereafter such forms of application were received, and on January 17, 1922, filled out and sent to the proper official, together with checks for the fees required by the law; that the checks were received by the Department on or about January 19, 1922, and, thereafter, on January 22, the plaintiffs received from the Director of the Real Estate Division of the Department, a letter, which was as follows: "Your application for registration under the provisions of the Real Estate Registration Law was duly received and at the meeting of the Real Estate Registration Board held recently it was approved. It will probably be six weeks or two months before certificate is mailed because of the fact the certificates have not been received from the printer. However, your record is clear in this office and you should have no hesitancy in practicing your profession pending the receipt of certificate of registration"; that the letter was signed, "W. H. H. Miller, Director."

The plaintiffs also offered to prove by the testimony of one Michels, "that he was the Superintendent of the Department of Registration and Education, and was familiar with conditions existing in the office at the time the law went into force on January 1, 1922; that the General Assembly failed to appropriate any funds to the department for the administration of the law and that the department was unable to employ the necessary clerical help in handling the thousands of applications coming in; that the

printed application blanks, etc., were not received from the printer until the latter part of November, 1921; that in the meantime thousands of applications were mailed in and that it was absolutely impossible for the department, with its limited help, to properly handle these documents as fast as they were received; that the lithographed certificates of registration were not received from the State printer until the early part of February, 1922, and that the first formal certificate issued bears date February 6, 1922; that the department in order to cover the situation issued a letter which was termed a 'Temporary Certificate' granting authority to the holder thereof to practice pending the receipt of the formal certificate, which letter was issued to all persons whose applications were received in the department in proper form and concerning whom there was no question as to his or her eligibility for registration or approval by the committee; that the application of Lucas & Flynn was received in the department on or about January 19, 1922, together with the fees required by law, and the letter above referred to was immediately mailed out."

That evidence was objected to by counsel for the defendants. The trial judge then asked counsel for the defendants, "You stand by the record here?" and counsel for the defendants answered in the affirmative. The trial judge then told the jury that as the plaintiffs "did not have such certificate at the time the transaction occurred" they could not claim the commission; and then instructed the jury to sign a verdict finding the issues for the defendants. No brief was filed here for the defendants.

Upon this appeal, the only question that arises is whether the physical issuance of a certificate of registration was a prerequisite to the right of the plaintiffs to act as real estate brokers. That question we answer in the negative. Where one desiring to become a real estate broker complies with all the statute

demands of him, he cannot be deprived of the rights which he thereby obtains, by the default of the State Department.

In *Prather v. People*, 85 Ill. 36, certain defendants were indicted, convicted and fined for selling intoxicating liquors without a license, but upon review in the Supreme Court it was held that the defendants were entitled to show that they had complied with the ordinances of the village, which had authority to license the sale of liquors, and that they had furnished bond and paid to the village treasurer the amount demanded for the license; and, further, that that evidence having been excluded, the judgment should be reversed.  Mr. Justice Breese there says: "In this case, everything required of appellants was done by them; they paid the money demanded and filed the required bond, and if a license was not issued, it was not their fault, but was the neglect of the village clerk.  The village has obtained their money and still retains it, so far as the record discloses.  A license, if issued, would only be evidence that the party had complied with all the requirements of the ordinance." And further on in that opinion, the court said that the words "to be protected, a party must have a license," did not mean any more than "that he must have competent authority to sell," and that that authority arose from a strict compliance with the village ordinance by the applicants for a license.  The *Prather* case was followed in *Zanone v. City of Mound City*, 11 Ill. App. 334.  In the latter case, the court said:  "The license was not issued and appellant proceeded with the sale of intoxicating liquors the same as if he held a license.  Having complied with the terms of the ordinance, might he sell intoxicating liquor before the license was issued?  We think he might do so.  *  *  *  Appellant must have competent authority to sell and he has that authority when he has strictly complied with the terms of the ordinance."

*Merzoian v. Papazian*, 53 Cal. App. 112, 199 Pac. 826; *Fossett v. Rock Island Lumber & Mfg. Co.*, 76 Kan. 428; *Wicks v. Carlisle*, 12 Okla. 337; *Draper v. Miller;* 92 Kan. 275. In the instant case, the facts are stronger than in the cases just cited, for here, not only did the plaintiffs comply with the provisions of the law in every respect, but the State Department, that is the licensing authority, apparently appreciating the exigencies of the situation, wrote to the plaintiffs (four days before the contract of sale here in question was entered into) that their application had been received and was approved, and that they were entitled "pending the receipt of certificate of registration, to practice as real estate brokers."

The statute here cited by the defense went into effect on January 1, 1922, but at that time, according to Michels, the Superintendent of the Department of Registration, no appropriation had been made for the administration of the law, so that it was practically impossible to properly handle the applications, and, as a result, actual certificates were not sent out until the early part of February, although in the meantime thousands of applications had been received. All that merely shows a further reason why the evidence offered at the trial was competent.

Inasmuch, therefore, as we are of the opinion that the trial court erred in excluding the proffered evidence and in ruling that such evidence would not show that the plaintiffs were entitled to act as real estate brokers, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

O'CONNOR, P. J., and THOMSON, J., concur.