[Civ. No. 5133. First Appellate District, Division One.—July 17, 1926.]

## A. FREDERICK et al., Respondents, v. PHILIP E. LANDFIELD, Appellant.

[1] SERVICES — SALE OF CORPORATE STOCK — COMMISSIONS — SUBSCRIPTION CONTRACT.—In an action by salesmen employed by the fiscal agent of a corporation to recover commissions for services rendered in procuring purchasers for stock of a corporation, defendant having agreed to pay plaintiffs for stock sold by them on the understanding that in taking subscriptions they should obtain twenty-five per cent of the amount of each subscription, plaintiffs are entitled to recover their commissions on a subscription taken by them from a subscriber, who contracted to deliver certain bonds in payment of the required amount, where said contract was valid and binding and one which the subscriber was financially able and willing to comply with.

[2] ID.—VARIANCE IN TERMS OF SALE—ACCEPTANCE.—In such action, where neither the corporation nor the defendant objected to the subscription contract as procured, but, on the contrary, were fully satisfied with and accepted it, and defendant made no objection to it by reason of the deferred payment until after other salesmen had obtained an additional subscription from said subscriber, the variance in the terms of the sale cannot relieve defendant from his liability to pay the agreed commission, since, under such circumstances, he must be deemed to have assented to such variance.

(1) 9 C. J., p. 601, n. 55.    (2) 9 C. J., p. 600, n. 54.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Erwin C. Easton and E. B. Taylor for Appellant.

Sullivan & Sullivan and Theo. J. Roche for Respondents.

TYLER, P. J.—This action was one brought by plaintiffs to recover the sum of $1,875 against defendant, a

2. See 4 Cal. Jur. 593.

stock and bond broker, for services rendered in procuring a purchaser for 150 shares of the capital stock of the Golden Gate Ferry Company, a common carrier. Defendant Landfield was the fiscal agent of the company in the sale of an issue of its capital stock and plaintiffs were employed by him as salesmen for the sale of these and other securities. As compensation for their services in selling the stock defendant Landfield agreed to pay plaintiffs 12½ per cent of the selling price of $100 a share. Under his agreement with the company Landfield was authorized to accept 25 per cent of the amount of each subscription, the balance to be paid at the office of the company. From this 25 per cent Landfield was entitled to deduct his full commission. Under their employment with Landfield plaintiffs were instructed as to the terms upon which sales could and would be made and with this understanding they entered upon their duties as salesmen. In the month of October, 1921, and prior to the transaction in question, plaintiff Frederick, as broker in the employ of Landfield, had sold to one R. M. Horn of Cloverdale 40 shares of the capital stock of the ferry company. Subsequently and on the seventh day of January of the following year the plaintiffs called at the office of Landfield together and asked him for the names of some persons who were likely to subscribe for or buy stock in the ferry company. They were informed by Landfield that, in his opinion, the Cloverdale district had not been properly canvassed and that there was a good opportunity for business in that locality. Acting upon this suggestion, plaintiffs repaired to the place in question and called upon Mr. Horn, to whom plaintiff Frederick had previously sold the amount of stock above mentioned. They succeeded in inducing Horn to subscribe for 150 shares of the stock. Plaintiffs requested him to pay one-quarter of the purchase price they were required to obtain. This was agreeable to Horn, but at this particular time he did not have the ready cash, but explained to plaintiffs that he was the owner of $33,000 registered Liberty bonds, and had a few days previously mailed a portion of these securities to Washington to be converted into coupon bonds, and he asked if it was possible to wait for at least ten days until the bonds could be returned to

Cloverdale, at which time he would mail a sufficient amount of the bonds direct to the company in payment of the required 25 per cent. Plaintiffs assented to this proposition, whereupon Horn signed the subscription agreement. Indorsed thereon was a memorandum of this agreement. Plaintiffs thereafter fully explained the transaction to defendant Landfield and delivered to him the subscription agreement. There is testimony to show that Landfield was pleased with the transaction and complimented plaintiffs for their success in obtaining the business. The subscription agreement was thereupon turned over to the Golden Gate Ferry Company. The vice-president of that company, at the suggestion of defendant Landfield, in a letter to Horn expressed his pleasure at the sale effected by plaintiffs. No question was raised at this time that plaintiffs were not entitled to their commissions by reason of the failure of Horn to make the actual initial payment of the customary 25 per cent, but, on the contrary, defendant Landfield caused to be deliverd to plaintiffs a "pending slip" for their commissions which was to be paid when the bonds were received. On January 18, 1922, just two days before the date on which Horn agreed to make his part payment, two salesmen, one named Rosenberg and the other Lichtman or Light, both of whom were employed by defendant, called upon Horn at his home in Cloverdale and demanded the bonds or money which Horn had agreed to pay upon his purchase of the 150 shares as above narrated. They represented to Horn that they had been sent by an officer of the company to make the collection. Horn informed them that he did not have the particular bonds with him, but if they would call the following day he would deliver other bonds to them. Rosenberg kept the appointment and, accompanied by Horn, the two proceeded to the latter's bank where the bonds were deposited. Rosenberg, discovering that Horn possessed a larger amount of bonds than that called for by the agreement, proceeded to induce him to purchase an additional 50 shares. He succeeded in doing so and left the bank with an agreement signed by Horn to purchase 200 shares of the stock of the value of $20,000, and $5,000 in bonds, the same being 25 per cent of the price which Horn agreed to pay for the

same. The bonds were indorsed to the Golden Gate Ferry Company. Rosenberg delivered the application to the company and it was accepted by it. Horn had signed this new agreement under the distinct understanding that 150 shares of stock already subscribed for by him in his transaction with plaintiffs were included in the new subscription of 200 shares. There is testimony to show that defendant attempted to conceal from plaintiffs that payment upon the stock had been made by Horn in accordance with his agreement with them. Upon ascertaining that Horn had made the payment plaintiffs demanded from defendant their earned commission. Defendant refused to pay the same, giving as his reason that they had not actually received the 25 per cent of the purchase price of the stock at the time of its sale and therefore were entitled to no commissions. This action followed and plaintiffs recovered judgment for the amount of their claim. We are asked to reverse the judgment upon the ground that the evidence shows that respondents did not comply with their contract by reason of their failure to actually procure the partial payment at the time of the sale. [1] The testimony shows without conflict that respondents obtained from Horn a perfectly valid and binding contract, and one that Horn was both financially able and willing to comply with. [2] It further shows that neither appellant nor the ferry company ever objected to the contract as procured, but, on the contrary, they were fully satisfied with and accepted the same, and defendant never made any objection to it by reason of the deferred payment until after Rosenberg and Light obtained the additional subscription mentioned. This variance in the terms of the sale, under such circumstances, cannot relieve appellant from his liability to pay the agreed commission, as he must be deemed to have assented to such variance. (*California Land Security Co.* v. *Ritchie*, 40 Cal. App. 246 [180 Pac. 625]; *Borton* v. *Barnes*, 48 Cal. App. 589 [192 Pac. 307]; *Merzoian* v. *Papazian*, 53 Cal. App. 112 [199 Pac. 826].)

The case does not warrant further discussion.

Judgment affirmed.

Knight, J., and Cashin, J., concurred.