### Edward H. Cooper, Appellee, v. El Louise Schoeberlein, Appellant.

### Gen. No. 7,865.

1.  BROKERS—*weight of evidence as to procuring cause of sale.* A real estate broker is not shown to be the procuring cause of a sale where he testifies that the owner was willing to sell but would not agree to pay commission or close a deal until she consulted with her attorney; that at a meeting with the attorney the intending purchaser stated, in answer to a question by the attorney, that the seller pay commissions; that no

deal was then consummated; and that the land was sold to the intending purchaser two months later; which evidence is substantially denied by the owner, her attorney and the purchaser who testify in effect that the broker did not effect the sale.

2. BROKERS—*excuse for not having certificate of registration.* Where a real estate broker claims to have effected a sale but did not have a certificate of registration required by Cahill's St. ch. 17a, ¶ 1, a letter from the issuing department acknowledging receipt of the fee and application, and stating that a certificate would be issued as soon as they could get around to it does not show a substantial compliance with the law, the certificate being issued one week after the application and there being no showing that the issuance had been unreasonably delayed.

3. STATUTES—*no retroactive effect of statute requiring registration of broker.* Cahill's St. ch. 17a, ¶ 1, requiring a real estate broker to have a certificate of registration, should not be construed so as to give a certificate a retroactive effect.

4. BROKERS—*necessity of certificate of registration.* In order for a real estate broker to recover commissions he must have the formal certificate of registration required by Cahill's St. ch. 17a, ¶ 1, at the time he performs the services for which he seeks compensation, unless he is without the certificate for some proper cause connected with the administration of the issuing department, such as absence of blanks and the like.

5. EVIDENCE—*necessity of foundation before testifying as to letter.* A person cannot testify as to the contents of a letter he received unless a proper foundation is laid.

Appeal by defendant from the Circuit Court of Kane county; the Hon. WILLIAM J. FULTON, Judge, presiding. Heard in this court at the October term, 1927. Reversed and remanded. Opinion filed January 12, 1928.

DONOVAN, BRAY & GRAY, for appellant.

N. J. ALDRICH and E. L. LYON, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee instituted suit in the circuit court of Kane county against appellant to recover commissions alleged to be due him as a real estate broker on the sale of certain lands belonging to appellant. The declaration consists of the common counts, accompanied by

an affidavit of merits. To said declaration appellant filed a plea of the general issue with affidavit of merits. A jury was waived and a trial was had, resulting in a finding and judgment in favor of appellee for $2,430. To reverse said judgment, this appeal is prosecuted.

It is first contended by appellant that the finding in this case is against the manifest weight of the evidence, for the reason that the proof fails to show that appellee was the procuring cause of the sale of appellant's land.

The record discloses that appellant was the owner of some 80 acres of land near the city of Aurora, and that some time between the 15th and 20th of March, 1925, appellee inquired of appellant as to whether she would be interested in selling the same. In this connection, among other things, appellee testified that appellant "wanted to know what I could get for it (the land) and I told her I did not know, but the Evans farm adjoining it had sold for $1,000 an acre"; that he inquired of appellant if she would object to paying commissions and that she replied, " 'Why I don't imagine I would, because I would have to pay it no matter who sold it.' She wanted to know what the commission would be and I said the general commission is three and five; * * * however, I told her three per cent would be all right with me. I told her perhaps I could bring her a man within a short time, or two or three that were talking about taking it to subdivide, and she said, 'Well, before completing the deal in the land I want to call Mr. Alschuler, my attorney, in,' and I said that was all right and I suggested that we have a meeting in Mr. Alschuler's office."

Appellee arranged a meeting in Mr. Alschuler's office between Mr. Alschuler, appellant, and a Mr. Walsh. The evidence tends to show that this meeting was on March 21st. Appellee testified that Walsh was a prospective purchaser of the land, and that Mr. Al-

schuler asked him who was to pay the commissions if a deal was consummated, and that Mr. Walsh replied, "Why you are a fine one talking about who is to pay the commission in this. Of course a commission is due Cooper and the seller pays it." He further testified that the meeting terminated and nothing more was said about commissions. The evidence is also to the effect that another meeting was had in Alschuler's office on March 24th, at which all of said parties were present. No deal was consummated at this time.

Thereafter, on May 16th, Walsh secured an option for the purchase of said premises, and, some weeks thereafter, he elected to and did purchase the same.

On cross examination, appellee testified: "She (appellant) did not make any definite agreement with me to sell the property or list it with me. She made no definite agreement with me as to how much commission she was to pay, nothing more than that I have said. She did not at any time agree to pay any commission except where the commission question came up in Mr. Alschuler's office. I am basing my entire claim for commission on the remark made in her home and what was said in Mr. Alschuler's office."

It is not contended that Mr. Alschuler stated that appellant would pay any commission, but only that he remained silent after Mr. Walsh had made the statement he did, in answer to Mr. Alschuler's question as to who would pay the commissions if a deal was consummated.

On the other hand, appellant testified with reference to the conversation at her home that "Mr. Cooper spoke to me about a commission and I told him I was not in a position to make a statement about commissions until I talked to my attorney. I did not know but perhaps I would have to pay them. He told me that the customary price was five per cent but on a big deal like that he would be satisfied with two. I did not agree to pay him any commission on that basis.

I told him I could not make any statement to him about commissions until I had talked to Mr. Alschuler. I do not remember anything further being said by either Mr. Cooper or myself with reference to commissions.'' She further testified that she did not remember as to anything being said with reference to commissions at the meeting in Mr. Alschuler's office.

Mr. Alschuler and Mr. Walsh both specifically denied that the conversation testified to by appellee occurred between them. Mr. Alschuler testified that he told appellee before the first meeting in his office that appellant would not pay any commissions, and that he also stated in his office at the time of said meeting that the sale, if made, must be net to appellant.

Mr. Walsh testified: ''Mr. Cooper told me that Mrs. Schoeberlein would not pay him any commission for the sale of this tract. This statement was made previous to the interview with Mr. Cooper and Mrs. Schoeberlein and Mr. Alschuler. That statement might have been made at my office in Aurora.'' He further testified that he agreed at this meeting on March 24th, if the sale were consummated at that time, that he himself would pay the commissions.

Appellee testified that after the last meeting in Mr. Alschuler's office, he from time to time conferred with Mr. Walsh and with appellant, and tried to get them together on a price for said real estate, but that he failed to do so.

Appellant testified that she had no conversation whatever with appellee with reference to selling said premises, after the meeting in Mr. Alschuler's office on the 24th of March. Mr. Walsh testified that he had no communication with appellee after said meeting on March 24th with reference to the purchase of said property; that he gave no further attention to the matter of buying the property, until a Mr. Bryan took the matter up with him, about the middle of May.

We therefore hold that the finding of the court on which said judgment is based is against the manifest weight of the evidence.

It is next contended by counsel for appellant that appellee was not a registered real estate broker at the time he was seeking to effect a sale of said property.

Appellee testified that he sent in an application for a license on March 18th, that he, ''sent the money to Boyd Brothers  *  *  *  a real estate firm in Aurora. I paid them by cash. It was through them that the application was sent to the department of education and registration. They mailed the letter. I did not see them mail it. I do not know that it had been mailed on the 18th of March, 1925.'' He further testified that he received a letter from the department of registration and education; that he could not definitely say just when he received the letter, that it might not have been received until the 24th or 25th of March; that he looked through his files and was unable to find it. Over the objection of appellant, appellee was allowed to testify that the letter acknowledged the receipt of the fee and application, and ''stated that the certificate would be issued as soon as they could get to it, and mailed to me, and that I was authorized to act as a broker from that time.  *  *  *  I don't remember who it was signed by.'' The certificate in question was offered in evidence by appellee and, among other things, states that appellee was ''duly registered and entitled to act as a registered real estate 1925 broker, under the provisions of an Act 'in relation to the definition, registration and regulation of real estate brokers and real estate salesmen,' from the date hereof until February 1, 1926.''

The director of said department also states in his certificate, among other things, ''That the fee required by law for such application was received in my office on the 20th day of March, 1925, and that the said application for registration as a registered real estate

broker was approved by the real estate commission on the 27th day of March, 1925, and that the certificate was issued on said 27th day of March, 1925.''

The certificate therefore discloses that the application was not approved until March 27th, the date on which the certificate was issued, and that it authorized appellee to do the business of a real estate broker from that date until February 1, 1926.

While counsel for appellee practically concedes that this is the state of the record, he insists that, having received the above-mentioned letter from the department of education and registration, and said certificate having been issued on said application, that it in effect authorized him to transact the business of a real estate broker from March 18th, the date be deposited his application and fee with Boyd Brothers to be forwarded to said department.

To adopt the construction contended for by appellee would give the certificate a retroactive effect.

Cahill's St. ch. 17a, ¶ 1, provides:

''That on and after January 1, 1922, it shall be unlawful for any person to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman, without a certificate of registration issued by the Department of Registration and Education.''

Counsel for appellee cite and rely on *Lucas v. Adomaitis*, 236 Ill. App. 254. That case involved a transaction happening shortly after the Registration Act went into effect. In that case the applicant made an informal application and on receipt of it the department wrote him that his application had been received; that at a meeting of the registration department it had been duly approved; that it would be impossible to furnish a certificate for six weeks or two months, be, cause the blanks had not been received; that the applicant's record was clear in that office and that he should have no hesitancy in practicing his profession pending

the receipt of his certificate of registration. This letter was signed by the head of the department. The court there held that the production of the letter showed a substantial compliance with the law.

The record in this case, however, fails to show a substantial compliance with the law. The certificate in this case was issued just one week after the application was received, and there is nothing to show that the issuance of the certificate was unreasonably delayed.

Statutes and ordinances of this character should not be construed to be of a retroactive character. *Wisniewski v. Wiszowaty*, 242 Ill. App. 631; *Kirk v. Henry M. Rich & Co.*, 156 Ill. App. 483–484; *Eckert v. Collot*, 46 Ill. App. 361. In *Kirk v. Henry M. Rich & Co.*, *supra*, the court at page 485 says:

"The services of plaintiff were rendered before he obtained a license. It is immaterial that after the services were rendered and before the lease was executed, he took out a license. Plaintiff performed his part of his contract with defendant when he procured a person willing and able to accept a lease on the terms offered by defendant, but his acts in the performance of the contract being unlawful, they cannot be the basis of a recovery.

"The license took effect from the date it was issued and cannot be given a retroactive effect so as to make valid acts of the plaintiff done between May 1 and October 30, 1907." Citing *Eckert v. Collot, supra; Elsberry v. State*, 52 Ala. 8; *State v. Pate*, 67 Mo. 488; *Haworth v. Montgomery*, 91 Tenn. 16. This case was cited and approved in *Wisniewski v. Wiszowaty, supra*.

It might be observed also with reference to *Lucas v. Adomaitis, supra*, being a first district case, that the same division of the Appellate Court for that district, and the same judge of that division who wrote the opinion in that case, wrote the opinion in *Wisniewski v. Wiszowaty, supra*, thereby disclosing that that court was not intending, by its decision on the facts in the

former case, to construe said statute as giving to certificates issued under it a retroactive effect.

The case of *Prather v. People,* 85 Ill. 36, cited by appellee, involved a liquor dealer's license. In that case, application had been made and filed, the license fee paid and receipted for, the bond filed and approved, and the clerk had been directed to issue the license. Nothing remained to be done except the ministerial act of delivering the license. The court properly held that there had been a substantial compliance by the applicant with the requirements of the ordinance.

The case of *Zanone v. City of Mound City,* 11 Ill. App. 334, is another liquor case involving the arbitrary refusal of a city to grant a license, and is not in point here.

In order for a real estate broker to recover commissions, he must have the formal certificate required by the statute, at the time he performs the services for which he seeks compensation unless for some cause connected with the administration of said department as in *Lucas v. Adomaitis, supra.*

This holding is in harmony with the holding of the Supreme and Appellate Courts of this State. *Wisniewski v. Wiszowaty, supra; Hendricks v. Richardson,* 233 Ill. App. 130; *Kirk v. Henry M. Rich & Co., supra; Eckert v. Collot, supra; Douthart v. Congdon,* 197 Ill. 349.

It was also insisted by appellant that the court erred in admitting the testimony of appellee as to the contents of the above-mentioned letter. The court erred in admitting the same, for the reason that the proper foundation therefor was not laid. It will not be necessary for us to discuss the ruling of the court on the propositions of law as the law in reference thereto is sufficiently set forth in this opinion.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*