24 Cal.Rptr. 225]

[Civ. No. 20127.   First Dist., Div. Two.   Aug. 20, 1962.]

VICTOR M. KAUFMANN et al., Plaintiffs and Respondents,
v. MARIE NILAN, Defendant and Appellant.

Christin & Davis and Joseph D. Taylor for Defendant and Appellant.

Roy A. Sharff and Merton R. Downing for Plaintiffs and Respondents.

AGEE, J.—Defendant owned an apartment house located at 1265 Washington Street, San Francisco. Plaintiffs, Kaufmann and Warda, are real estate brokers, operating as a partnership. On August 23, 1956, defendant executed a standard "Uniform Authorization to Sell," designating plaintiffs as the exclusive agents, until October 30, 1956, to sell the property for $98,500 and agreeing to pay them a commission of 5 per cent thereof in the event of a sale. Plaintiffs found a buyer but defendant refused to sell. Thereupon, plaintiffs sued defendant for their commission and recovered a judgment for $4,925, from which defendant appeals.

The authorization agreement signed by defendant describes the property to be sold as "Lot and improvements known and designated as 1265 Washington St." The terms of payment are stated as follows: "29% down payment balance to be paid at 400- per mo or more including interest at 5%. Possession by agreement." These provisions were filled in on the printed form by one Trkola, a salesman employed by plaintiffs, and he signed the agreement on their behalf after defendant had signed as "Seller."

One of the issues in this case is whether any furniture in

the apartments was intended by the defendant to be included in the authorization to sell. Trkola testified, over objection, that it was. He produced a form work sheet which he had filled out at the time when defendant signed the authorization to sell. It shows all of the financial details concerning the property, including a listing of the apartments which were furnished, unfurnished or partly furnished. The rent for each apartment was listed. Defendant told Trkola that she would pay $85 per month as rent for the apartment which she occupied but that she intended to move to Redwood City as soon as the apartment house she was building there was ready for occupancy. This was the reason for inserting the phrase, "Possession by agreement," in the authorization. It was also agreed that the furniture in defendant's apartment was not to be included in the sale.

Trkola told defendant that the work sheet which he had filled out would be attached to the authorization being retained by him but that he was not filling out a copy of it for her because she had had the property listed so many times before that it was not necessary. Defendant replied that this was all right with her. She admitted in her testimony that she had given the information filled in on the work sheet to Trkola and that it was the same information that she had given previously to the other brokers when listing the property for sale.

On September 5, 1956, plaintiffs obtained a buyer, one Mary O. Jann, who deposited a certified check for $1,000 and executed a "Uniform Agreement of Sale and Deposit Receipt," whereby she agreed to purchase the property for the specified sum. Trkola signed it as agent for defendant. He immediately took the document to defendant, at which time he read to her the terms to which Mrs. Jann had agreed. Defendant thereupon told him that she had changed her mind about selling. Trkola asked: "What is wrong with this deal? . . . If there's anything wrong with it in any way, you tell me what it is." Defendant replied: "Well, I've just changed my mind."

On the following day, Trkola returned with plaintiff Kaufmann, to whose inquiries defendant responded: "Mr. Kaufmann, I have just changed my mind, and I'm not going to sell." As they were leaving, defendant said: "I'll leave it up to you gentlemen. My attorney will get me out of it. I hope you will enjoy your commission."

Some days later, Kaufmann talked to defendant at her place

of business but she again said, "I've just changed my mind, that's all."

The court found against defendant on two grounds. The first is that the agreement to purchase, signed by Mrs. Jann on September 5, 1956, was in accordance with the authorization to sell, executed by defendant on August 23, 1956.

The second ground is stated in the findings, as follows: "Without in any way modifying, qualifying or altering any of the findings herein the Court finds that the defendant Marie Nilan by refusing to sell the aforementioned property and not objecting to any of the terms of said offer of Mary O. Jann when presented to her thereby waived any variance between the said authorization to sell and the said offer of Mary O. Jann, if any existed." A determination of the case on this ground alone is fully supported by the law and the evidence.

In *Merzoian* v. *Papazian*, 53 Cal.App. 112 [199 P. 826], at p. 115, the court stated: "But granting that these asserted differences exist [between the authorization and the acceptance], still they are of no moment, for it clearly appears that the defendant [owner] did not object to the proffered contract on these grounds. The rule is established in this state that where an agent produces a purchaser ready, willing and able to purchase *substantially* upon the authorized terms, and the vendor fails to reject the offer on the ground of its variance from the terms given the broker, such difference will be deemed assented to, and the broker will be entitled to his commission." (Emphasis added.) See also *Lathrop* v. *Gauger*, 127 Cal.App.2d 754, 770 [274 P.2d 730]; *Showers* v. *Rober*, 92 Cal.App. 171, 175 [267 P. 884]; *California Land Security Co.* v. *Ritchie*, 40 Cal.App. 246, 253 [180 P. 625].

This is a salutary rule, particularly in its application to this case. The first inkling that plaintiffs had of any claim of variance between the offer and the acceptance was in a letter from defendant's attorney, dated September 10, 1956, stating: "It is our opinion, and we have so advised Mrs. Nilan, that the Uniform Agreement of Sale and Deposit Receipt submitted by Mrs. Mary Jann does not comply with the terms of the Authorization to Sell heretofore given you by Mrs. Nilan."

On September 12, 1956, plaintiffs' attorney replied, pointing out that "your letter does not state in what respect, if any, the offer of Mary O. Jann does not conform to the said

Authorization to Sell.'' Apparently anticipating one possible objection, the letter waived the provision that Mrs. Jann's acceptance was subject to inspection of all units. Shortly thereafter, the provision for termite inspection was also waived, it being learned that such inspection had been made several years before.

On September 14, 1956, defendant's attorney sent a letter in reply to the letter of September 12. From this letter, plaintiffs learned for the first time what defendant's alleged objections were. The first objection was that the down payment of $27,500, as provided in the acceptance, did not equal 29 per cent of the purchase price. The 29 per cent condition had been imposed by defendant so that she could take advantage of the tax provision regarding installment sales, which applies ''only if in the taxable year of the sale . . . the payments . . . do not exceed 30% of the selling price.'' (26 U.S.C.A., Internal Revenue Code § 453.) The $27,500 down payment plus the monthly payments of $400 would keep the total payments during 1956 below 30 per cent of the selling price. In any event, Mrs. Jann agreed to increase the down payment to $28,565, which is 29 per cent of the selling price, and so this objection was eliminated.

The second objection is stated by defendant's attorney as follows: ''The word 'improvements' contained in the authorization was not intended by Mrs. Nilan to include 'all equipment and furniture necessary for the operation of the building,' even though this may have been the intention of the purchaser or the brokers.''

On September 15, 1956, plaintiffs' attorney wrote: ''You raise a question about 'all equipment and furniture necessary for operation of building' being included in the offer to purchase. The term 'improvements' used in the authorization to sell was meant by all parties, including Mrs. Nilan, and understood by all parties to mean and include all of the furniture, furnishings and equipment in the property known as 1265 Washington Street, except the personal property belonging to tenants and then in the apartment occupied by Mrs. Nilan herself. The offer to purchase is in conformity with the intention of the parties at the time the authorization to sell was drawn and executed.''

By letter of September 18, 1956, defendant's attorney denied that the foregoing was the intention of his client. By this time, the five days allowed to the defendant to approve the agreement signed by Mrs. Jann had long since expired.

Mrs. Jann demanded the return of her certified check and withdrew her acceptance. Trkola testified that Mrs. Jann stated, ''I want to buy something else.'' Plaintiffs thereupon filed this action to recover their commission, as provided in the authorization executed by defendant.

The findings of the trial court relating to the subject matter of the sale are as follows: that defendant was the owner of the apartment house, consisting of twelve apartments, together with all of the furniture, furnishings and equipment in eight of said apartments and part of the furniture, furnishings and equipment in two of said apartments and also certain other articles in and about the apartment house used in its operation; that the term ''improvements'' as used in the authorization to sell was intended and understood by the parties to mean all of said furniture, furnishings and equipment except that in the apartment occupied by defendant and any articles belonging to tenants.

There is no question as to the sufficiency of the evidence to support these findings. The issue is whether such evidence should have been admitted.

The situation herein is in all material respects identical to that in *Lathrop* v. *Gauger,* 127 Cal.App.2d 754 [274 P.2d 730]. There the defendant property owner appealed from a judgment in favor of the plaintiff real estate broker in his action to recover a commission. Defendant was the owner of a twenty-unit apartment building, of which eighteen units were furnished. By a document describing the property, plaintiff was given an exclusive agency to negotiate a sale of the property for $85,000. The document was silent as to whether the furniture was included in the listed property. Plaintiff obtained an offer which provided that furniture was to be included therein for the stated purchase price, that the balance of the purchase price over the deposit was to be placed in escrow within 30 days from the date of the offer, and that the seller was to furnish a termite clearance. These terms were not within the listing agreement. Upon delivery of the offer to the defendant, the defendant categorically rejected the offer, and, expressing no specific objection to any of its terms or conditions, stated simply that she refused to sell the property for the listed price and desired to withdraw it from the market. The trial court, over defendant's objection, admitted evidence of the surrounding circumstances and of discussions between the parties with reference to the listing. It found therefrom that the listing included the furniture as

well as the real property. As does the defendant here, the defendant in that case contended on appeal that the trial court erred in admitting oral evidence " 'for the purpose of expanding the terms of the listing agreement to include the furniture and furnishings contained in the apartments on the real estate.' " The reviewing court held that the evidence was properly admitted, stating at length the principles which are precisely applicable in the case at bar (pp. 761-763) : "The parol evidence above referred to was properly admitted. It was offered by plaintiff, and received by the court, not for the purpose of altering or adding to the listing, but for the sole purpose of clarifying and identifying its subject matter and to assist in interpreting the expressed intention of the parties in the light of the circumstances existing at the time the listing was executed. (*Balfour* v. *Fresno Canal & Irr. Co.*, 109 Cal. 221, 225 [41 P. 876] ; *Von Rohr* v. *Neely*, 76 Cal.App.2d 713, 715-716 [173 P.2d 828] ; *Gibson* v. *De La Salle Institute*, 66 Cal.App.2d 609, 621-622 [152 P.2d 774].) 'For the proper construction of an instrument, the circumstances under which it was made, *including the situation of the subject of the instrument*, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.' (Emphasis added.) (Code Civ. Proc., § 1860.) Furthermore, as stated in the last paragraph of section 1856 of the Code of Civil Procedure, '. . . this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1860, or to explain an extrinsic ambiguity. . . .' (Emphasis added.)

"The listing executed by defendant, taken as a whole, is not so plain or free from ambiguity as to exclude parol evidence to explain it. The listing refers to a 20-unit property located at 25 Westmont Dr., Alhambra, 'occupied by tenants.' On its face, the listing reflects an intention or understanding to sell investment property consisting of income-yielding rental units currently occupied by tenants. However, an apparent complication is encountered when the premises located at the named street address is disclosed to be a building consisting of *furnished* rental units. The question logically arises as to whether the furniture, which is an integral part of the income-producing operation at the stated address, was intended to be included in the transaction covered by the listing, which is silent on the subject of furniture. Such a situation is a classic illustration of what our statute denominates an 'extrinsic

ambiguity' (Code Civ. Proc., § 1856, subd. 2), namely, an ambiguity that arises when the instrument is read in the light of all the circumstances attending its formulation. (*Pacific Indem. Co.* v. *California Electric Works, Ltd.*, 29 Cal.App.2d 260, 272-273 [84 P.2d 313] ; *Lewis Publishing Co.* v. *Henderson,* 103 Cal.App. 425, 428 [284 P. 713].) Since an extrinsic ambiguity thus appears with reference to the precise property the parties intended to be comprehended within their contract, parol evidence may be resorted to for the purpose of ascertaining the subject matter to which their intention relates. (*Pacific Indem. Co.* v. *California Electric Works, Ltd., supra; Gibson* v. *De La Salle Institute, supra,* p. 623; *Reed* v. *Merchants' Mutual Ins. Co.,* 95 U.S. 23, 30 [24 L.Ed. 348].) The court's function is to effectuate the intention of the parties by properly applying their contract to its subject matter. To achieve this purpose, the circumstances under which the contract was made must frequently be considered as an aid to construction. The statutes and cases above clearly recognize that resort may be had to the aid furnished by evidence dehors the writing whenever an ambiguity arises in applying the written instrument to its subject matter.

"In the instant case, the listing, unexplained, might be construed either as supporting plaintiff's contention that the premises and furnishings at 25 Westmont Drive were being placed on the market *in toto* as a parcel of income property or defendant's claim that the real property alone was included. Evidence was properly received, therefore, as to 'circumstances surrounding the parties at the time they contracted . . . including the object, nature and subject matter of the agreement . . .' in order that the court might 'place itself in the same situation in which the parties found themselves at the time of contracting.' (*Lemm* v. *Stillwater Land & Cattle Co.,* 217 Cal. 474, 480-481 [19 P.2d 785] ; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665] ; Code Civ. Proc., § 1860.) Such evidence was not received for the purpose of varying the terms of the listing or impinging on its contents, but to arrive at the intention of the parties with respect to the actual subject matter of the listing.''

We hold that it was proper for the trial court herein to admit evidence to identify what the parties intended to include as "improvements."

■ Without conceding this, defendant questions the financial ability of Mrs. Jann to purchase on the terms author-

ized. The burden was on plaintiffs to prove this. Mrs. Jann testified that she had the necessary financial ability and there was no evidence to the contrary. She stated on direct examination that the source of the down payment was to come from the sale of an apartment house at 1825 Leavenworth Street, San Francisco, which "we" owned and which was worth $60,000. It appears that "we" was intended to mean the "family." Mrs. Jann drew the certified check for $1,000 which accompanied the deposit receipt agreement and she testified that the purchase was to be on behalf of herself and her husband "or for the family." She was not asked who were the members of "the family." Her cross-examination was confined to three questions and none of these were directed to her financial ability. Apparently, defendant's counsel had no question at that time (or at any time during the trial) as to Mrs. Jann's financial ability. It will also be recalled that the defendant herself never at any time voiced any such question. The court found, on the foregoing undisputed testimony, that Mrs. Jann was "ready, able and willing" to purchase the property upon the terms and conditions contained in the authorization to sell, executed by defendant. This finding is supported by substantial evidence.

The next contention of defendant is that plaintiffs were not entitled to a commission until a sale has been consummated. The commission provision in the authorization agreement is as follows: *"In the event of any sale* of said property during the term specified in this authorization or any extension thereof, the seller agrees to pay said agent, . . . as commission, a sum equal to five per cent . . . of the purchase price." (Emphasis ours.) Where, as here, the consummation of a sale is prevented by the seller's wrongful repudiation of the agreement to sell, the broker cannot for this reason be deprived of a commission. (*Coulter* v. *Howard,* 203 Cal. 17, 23 [262 P. 751] ; 9 Cal.Jur.2d, "Brokers," § 97, pp. 271-272.)

The judgment is affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 17, 1962.