26 F.3d 131
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MARCUS & MILLICHAP REAL ESTATE INVESTMENT BROKERAGE COMPANY,
Plaintiff-Appellant,
v.
Robert A. WEISS, Gwynneth Weiss, and Frank Gagliardi,
Trustee for the Weiss Charitable Remainder
Unitrust, Defendants-Appellees.
 No. 93-15217.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1994.
Decided June 7, 1994.
 
 Before GOODWIN, NORRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Marcus & Millichap, a real estate brokerage firm based in California, sued to recover a commission allegedly owed it by Robert and Gwynneth Weiss, owners of an apartment complex in Nevada. The district court found that Nevada law governed the parties' agreement, and held that Marcus & Millichap failed to establish that it produced a ready, willing, and able buyer. In the alternative, the court held that Marcus & Millichap was barred from recovering its commission under Nevada law. The court also awarded attorneys' fees and costs to the Weisses. Marcus & Millichap appeals the district court's judgment. We affirm.
 
 
 3
 I. Ready, Willing, and Able Buyer.
 
 
 4
 Under Nevada law, a real estate broker must produce a buyer who is ready, willing, and able to purchase the property upon the terms prescribed by the seller before the broker is entitled to a commission. Estate of Greenberg v. Skurski, 602 P.2d 178, 180 (Nev.1979). In recovering a commission that was denied her by the seller, a broker has the burden of establishing that she submitted an offer that substantially complied with the terms of the listing agreement and that was rejected by the seller in bad faith. Reese v. Utter, 551 P.2d 1099, 1100 (Nev.1976).
 
 
 5
 Nevada state courts have not yet spoken on the evidentiary burden necessary to show the financial ability of a prospective purchaser. The parties briefed the issue under California law, and the district court found that the result would be the same under Nevada law. Generally, a broker attempting to show the financial ability of a prospective purchaser need not prove that the purchaser actually had enough cash on hand to buy the property. Pellaton v. Brunski, 69 Cal.App. 301, 304 (1924); see also Joiner v. Lockhart, 350 So.2d 199, 201 (La.Ct.App.), writ denied, 352 So.2d 240 (La.1977). However, the broker must show that the purchaser's assets, weighed against her liabilities, were sufficient to allow her to obtain the financing necessary to purchase the property. Pellaton, 69 Cal.App. at 304 (buyer need only show ability "to command the necessary funds to close the deal within the time required."); Russell v. Ramm, 200 Cal. 348, 351-53 (1927) (evidence that prospective purchasers owned considerable property and had significant sums of money in the bank was sufficient to show financial ability).
 
 
 6
 The only evidence Marcus & Millichap offered regarding the extent of Maimon's assets was excluded as hearsay. In addition, Marcus & Millichap did not subpoena Maimon to testify, instead relying on the testimony of its brokers regarding Maimon's general reputation in the real estate business.
 
 
 7
 While some cases hold that the testimony of the prospective buyer alone is sufficient to show financial ability, others hold that more is required. Compare Mengel v. Lawrence, 276 A.D. 180 (N.Y.App.Div.1949) (purchaser's testimony that he had the ability to purchase property was believed by jury and upheld on appeal) with Taibi v. American Banknote Co., 135 A.D.2d 810 (N.Y.App.Div.), appeal denied, 528 N.E.2d 521 (N.Y.1987) (affidavit by prospective purchaser asserting his financial ability was insufficient where not accompanied by financial statements substantiating claim). A California state court has held that a broker met its burden of proving that it had produced an able buyer by submitting the buyer's declaration, in addition to a declaration of the broker's attorney who had knowledge of the buyer's financial ability to purchase the property in question. Steve Schmidt & Co. v. Berry, 183 Cal.App.3d 1299, 1307 (1986). However, Marcus & Millichap did not brief (and we have not found) any authority holding that third party testimony alone is sufficient to show the financial ability of the purchaser.[1] See generally Randy R. Koenders, Annotation, What Constitutes Financial Ability to Perform within Rule Entitling Broker to Commission for Producing Ready, Willing, and Able Purchaser of Real Property, 87 A.L.R. 4th 11 (1991).
 
 
 8
 Evidence was also presented during the trial that another person, Jack Gindi, intended to invest in the Weiss property with David Maimon. Although Marcus & Millichap presented testimony regarding the close business relationship that existed between Maimon and Gindi, it did not offer any evidence that Jack Gindi was legally bound to lend Maimon the money necessary to purchase the Weiss property. "A proposed purchaser cannot be said to be able to purchase when he is dependent upon third parties, who are in no way bound to furnish the funds with which to make the purchase." Coger v. Wiltsey, 117 Cal.App. 652, 659 (1931); see also 87 A.L.R. 4th at 76-80.
 
 
 9
 The case law indicates that Marcus & Millichap failed to present evidence sufficient to establish as a matter of law Maimon's financial ability to purchase the Weiss property. Therefore, we need not reach the other substantive issues raised by Marcus & Millichap on appeal.[2]
 
 
 10
 II. Attorneys' Fees.
 
 
 11
 Pursuant to paragraph eleven of the Marcus & Millichap representation agreement, the district court awarded $270,000 in attorneys' fees and $7,160 in costs to the Weisses as the prevailing party in the litigation. Paragraph eleven provides that "[i]n any litigation ... which may arise between the parties hereto, the prevailing party shall be entitled to recover its costs, including ... reasonable attorneys' fees ..." Marcus & Millichap contests this award, arguing that, because it prevailed on all of the Weisses' counterclaims, neither party can be considered the prevailing party.
 
 
 12
 The Ninth Circuit has held that attorneys' fees awards are generally reviewed for an abuse of discretion, but whether a district court applied the correct legal standard to the fee request is reviewed de novo. United States v. Callahan, 884 F.2d 1180, 1184-85 (9th Cir.1989), cert. denied, 493 U.S. 1094 (1990).
 
 
 13
 Under Nevada law, a court may award attorneys' fees pursuant to a contract. Dep't of Human Resources v. Fowler, 858 P.2d 375, 376 (Nev.1993). Nevada courts have held that "a plaintiff may be considered the prevailing party for attorney fee purposes if it succeeds on any significant issue in litigation which achieves some of the benefit it sought in bringing the suit." Women's Fed. Sav. & Loan Ass'n v. Nevada Nat'l Bank, 623 F.Supp. 469, 470 (D.Nev.1985); see also Chowdry v. NLVH, Inc., 851 P.2d 459, 464 (Nev.1993). Here, the district court found the Weisses "to be the prevailing party under Nevada law as they prevailed on the most significant and primary issue in the case, specifically the issue of whether plaintiff was entitled to a real estate brokerage commission."
 
 
 14
 The amount of fees awarded, $270,000, was $100,000 less than requested by the Weisses. In determining the fee award, the district court considered seven of the twelve factors listed by the Kerr test, which was adopted by this Circuit to aid in the determination and review of the reasonableness of fee awards. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951 (1976).[3]
 
 
 15
 Here, although Marcus & Millichap prevailed on certain counterclaims brought by the Weisses, the Weisses succeeded on the central issue in the litigation. Therefore, we find that the award of attorneys' fees and costs to the Weisses was in accordance with Nevada law and that the district court did not abuse its discretion.
 
 
 16
 III. Conclusion.
 
 
 17
 The judgment of the district court is AFFIRMED.
 
 WILLIAM A. NORRIS, Circuit Judge, dissenting:
 
 18
 I believe that the evidence is sufficient to support the jury verdict that Maimon was a "ready, willing, and able" buyer. Evidence was admitted that:
 
 
 19
 . Maimon made five separate offers at the listed price of $23 million, and offered to shorten the inspection period to only 10 days, less than required by the listing agreement.
 
 
 20
 . Maimon provided the Weisses with a $100,000 deposit check and subsequently offered to increase his deposit to $300,000, which would be released to the Weisses as liquidated damages in the event he did not perform.
 
 
 21
 . Maimon offered to provide for no financing contingency, although the listing agreement provided the buyer with 60 days to obtain financing.
 
 
 22
 . Maimon's general reputation in the Los Angeles real estate community was characterized as "excellent," "experienced," "professional," and "extremely well-qualified." Maimon was known was as an investor who owned large and small properties and who was capable of buying large properties outside of Los Angeles.
 
 
 23
 . Maimon had a relationship with Gindi, a wealthy real estate investor whose net worth exceeded $100 million. It was known in the Los Angeles real estate community that the two men were partners and were looking for large properties to purchase together.
 
 
 24
 . Maimon and Gindi owned a complex together in Visalia, California.
 
 
 25
 . Mr. Weiss knew of Gindi through Jewish charitable organizations and that he considered him to be "substantial."
 
 
 26
 On this record, no adverse inference may be drawn from the fact that Maimon was not called as a witness by Marcus & Millichap. Accordingly, I DISSENT.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Marcus & Millichap argues that Maimon's financial ability to purchase the Grand Plaza Apartments is evidenced by the facts that Maimon's at-list offer provided for no financial contingencies and was accompanied by a $100,000 deposit check. However, the Appellant fails to cite a case indicating that these facts alone are sufficient evidence of financial ability. See, e.g., Franklin v. Hansen, 27 Cal.Rptr. 216 (1962), superseded on other grounds, 381 P.2d 386 (1963) (purchaser who, inter alia, paid downpayment on farm and showed a financial statement exhibiting a net worth greater than the purchaser price held financially able); Kaufmann v. Nilan, 207 Cal.App.2d 1 (1962) (evidence of a $1,000 deposit by the buyer, combined with her testimony that she had the ability to purchase the property at issue for $98,500, held to be sufficient proof of financial ability). For us to hold that the terms of an offer (including a deposit worth 0.4% of the purchase price of the property for sale) alone are sufficient evidence of a purchaser's financial ability would greatly weaken the evidentiary burden required by the existing case law
 
 
 [2]
 As we agree with the district court that the burden of proof of a buyer's financial ability is the same under Nevada law as it is under California law, we need not reach the issue whether the district court was correct in holding that the governing law clause of the second representation agreement should be reformed to provide for Nevada law. In addition, we need not reach the issues whether Marcus & Millichap is precluded under Nevada Revised Statute Sec. 645.270 from bringing an action to collect its commission, or whether Nevada real estate brokerage law creates an unreasonable burden on interstate commerce. See Nev.Rev.Stat. Sec. 645.550
 
 
 [3]
 Specifically, the district court found that (1) the time and work expended by defense counsel was significantly more than necessary; (2) the issues were not complex, but were more difficult than normal; (3) defense counsel's expertise in real estate law was helpful to the case; (4) the fees charged were within community standards for similar work; (5) the amount of money involved was significant and the results obtained by defense counsel were good; (6) the reputation, experience, and ability of defense counsel were high; and (7) awards in similar cases were comparable