[Civ. No. 3181. Second Appellate District, Division Two.—May 1, 1920.]

## RALPH ARNOLD, Respondent, v. LA BELLE OIL COMPANY (a Corporation), Appellant.

[1] BROKER'S COMMISSIONS—CONTRACT OF EMPLOYMENT BY CORPORATION—PRIMA FACIE SHOWING.—In an action against a corporation to recover a broker's commission, a document purporting on its face to have been signed by the president and the secretary of the corporation, and having attached thereto and impressed thereon the seal of the corporation, is entitled to admission as *prima facie* having been authorized and executed by the corporation.

[2] ID.—STATUTE OF FRAUDS—EMPLOYMENT OF AGENT—CONSTRUCTION OF CODE SECTION.—Section 1624, subdivision 6, of the Civil Code does not require any formal contract but only that the fact of employment as agent or broker to sell real estate for compensation or a commission be expressed in writing, signed by the party to be charged, or by his agent.

---

2. Right of broker to recover commission under oral contract of employment where statute requires written contract, notes, 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133; 44 L. R. A. 601; 9 L. R. A. (N. S.) 933.

[3] ID.—EXECUTION BY SECRETARY OF CORPORATION—COMPLIANCE WITH BY TEMPORARY APPOINTEE.—Where a given instrument is required to be executed by the secretary of a corporation, execution thereof by a person appointed by the directors to act in the place of the regularly elected, qualified, or acting secretary is sufficient.

[4] ID.—PROCURING OF PURCHASER AT LESSER PRICE—RIGHT TO COMPENSATION.—Where a broker procures a purchaser, not at the price specified in his contract of employment but at a lesser price, and the owner enters into an agreement of sale with such purchaser at such lesser price, under which agreement the latter enters into possession, the broker is entitled to the compensation agreed upon, according to his contract of employment.

[5] ID.—MODIFICATION OF PURCHASE AGREEMENT—RIGHTS OF BROKER NOT AFFECTED.—The subsequent modification of such contract of purchase by mutual consent of the vendor and the purchaser would not affect the right of the broker to the compensation agreed upon in his contract of employment, and to which he was entitled when the vendor and the purchaser enter into the original contract of purchase.

[6] ID.—APPEAL—FAILURE TO ANSWER RESPONDENT'S STATEMENTS—ASSUMPTION.—Where, in reply to the appellant's contention that the judgment of the trial court is erroneous, in so far as it found in favor of respondent the matters . alleged in his supplemental complaint, the respondent states that it was the understanding of the trial court and himself that the stipulation of the appellant was that judgment as to those matters should follow the judgment on the matters alleged in the complaint, and such statement is neither answered nor denied, it will be assumed that the appellant concedes the truth of such statement and that the judgment of the trial court was proper.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Black & Black for Appellant.

E. S. Williams for Respondent.

THOMAS J.—The plaintiff seeks to recover the sum of $4,362.43, claimed to be due and unpaid at the time of the commencement of this action, and the further sum of $300,

---

4. Right of broker to commission where less than stipulated price is accepted by owner, notes, Ann. Cas. 1913E, 784; Ann. Cas. 1914C, 138.

claimed to have become due, owing, and unpaid "subsequent to the filing of the original complaint herein and the commencement of this action, and prior to the date of trial," by virtue of certain of the terms of a written instrument, which, in words and figures, is as follows:

.  "January 15, 1912.

"Mr. Ralph Arnold,
     "700 H. W. Hellman Building,
          "Los Angeles, California.

"Dear Sir:

"Until further notice, or until the La Belle Oil Company has sold its property in the Midway Oil Field to some other person or persons, you are authorized by us to offer for sale to your clients the North ½ of the Southwest Quarter of Section 4, Township 32 South Range 23 E. M. D. B. & M. its 80 acres, more or less, at $4,000.00 per acre, on such terms and conditions as we, i. e., yourself and ourselves may mutually agree upon, and in the event of your effecting a sale of our land in Section 4 (above described) or in the event of our effecting sale to any of your clients through your efforts or assistance, we agree to pay you five per cent (5%) commission on the total sales price, in the manner as and when paid to us.

"It is understood that this is not meant as an exclusive option, and in the event of our being able to make a *bona fide* sale before we might be able to serve notice on you of our desire so to do, and in the event such sale be made to some other person or persons than those we may have come in contact with outside of your efforts, you will agree that there be no commission due you except and alone where you have participated.

"If the above is a true and correct understanding of our agreement, kindly sign a duplicate of this, signifying your acceptance.

"Very truly yours,
          "LA BELLE OIL COMPANY
     "(Signed)    W. P. CUNNINGHAM, President.

     "Acting Secretary,
          "W. P. THOMPSON,
     "Corporate Seal of La Belle Oil Company.

"Approved Jan. 15, 1912.
          "(Signed)    RALPH ARNOLD."

By proper allegation it is shown that plaintiff has fully complied with the terms of the foregoing instrument.

There was a demurrer to the amended complaint, which was overruled. Except for the mere formal parts, and the fact that it admits that the amount claimed to be due has not been paid, etc., defendant's answer denies each and every material allegation of the complaint. On the issues thus presented the case was tried by the court without a jury. At the close of plaintiff's case defendant moved for nonsuit, which motion was denied. Judgment went for plaintiff for the amount of his commission of five per cent on the payments actually made to and received by the La Belle Oil Company prior to the commencement of the action, and also on the balance of $6,000 *"which would have been paid prior to the trial if not impounded by the attachment herein."* In short, the court found that all of the allegations of the complaint, as amended, as well as those of the supplemental complaint, were, and each of them was, true. The appeal is from the judgment so entered.

Finding No. II of the court reads as follows: "The court finds that while it is true that there was no express resolution of the board of directors of said corporation defendant authorizing said written agreement with said plaintiff, there were no meetings of the board of directors of said corporation defendant from September 17, 1910, to March 13, 1912, and that during the whole of that period, and including the time when said agreement with said plaintiff was made, the directors of said defendant conducted the business of said defendant by informal discussion and conference between all of the directors except one of them, to wit: F. E. Woodley, who did not give his attention to the affairs of said defendant corporation, and that at the time said agreement was made with said plaintiff and at all times thereafter all of said directors, excepting said Woodley, knew of and about said agreement and that the same was made on behalf of said defendant corporation by its president and secretary and discussed the same between them, and that said corporation did not, nor did any of its directors, at any time disavow said agreement or the execution thereof or dissent therefrom or claim to or notify said plaintiff that the same was not binding in any respect upon said defendant corporation; and the court further finds that said agreement with

said plaintiff was specifically, expressly and unanimously ratified in a written resolution of the board of directors of said defendant corporation at a regular meeting of said board held on June 12, 1912, at which a quorum of the directors of said corporation defendant was present and voting. The court finds that said agreement with said plaintiff or said plaintiff's agency was never terminated by notice or otherwise by said defendant.''

It is urged by appellant here, as in the court below, (1) ''that the instrument quoted in full above and which is designated in the record as plaintiff's exhibit 1, was not proven; that without proper authorization said exhibit was not the act of defendant, and that no evidence was offered to show authorization; (2) that appellant was entitled to judgment at the close of plaintiff's case''—in other words, errors of law occurring at the trial.

It is contended that the evidence is insufficient to show that Mr. Cunningham was president, or that Thompson was secretary, of the defendant company at the time of the execution and delivery by those parties of plaintiff's exhibit 1 to the plaintiff. The evidence on this point was by the plaintiff himself, which was that Mr. Cunningham, the president, and Mr. Thompson, the acting secretary of the La Belle Oil Company, signed plaintiff's exhibit No. 1 in his presence. Following this testimony the instrument was offered in evidence. To this defendant objected on the ground that it does not purport on its face to be authorized by the defendant corporation, and until the authorization be produced it is incompetent and immaterial. This objection was by the court overruled.

At the threshold of this matter it may be observed that the defendant's answer, so far as it refers to the allegations of the complaint, simply denies that the instrument in question was binding upon the defendant, for the reason that defendant never authorized its name to be signed or its seal attached thereto. By its answer defendant, in legal effect, admits the execution and delivery of the instrument to plaintiff by the officers of the defendant corporation, but denies that those officers had authority from it so to do.

[1] The evidence, as it stood at the time of the offer of the instrument in evidence, we think made a *prima facie* case. Indeed, the instrument, plaintiff's exhibit No. 1,

might have been introduced without the introduction of any preliminary oral evidence. Had such been the situation, a *prima facie* case to that extent would have been established, for the reason that the document on its face purported to have been signed by the president and secretary, and had attached thereto and impressed thereon the seal of the defendant corporation. Such a showing was sufficient to shift the burden of proof on defendant. (*McKee* v. *Cunningham*, 2 Cal. App. 684, [84 Pac. 260].) For these reasons we think this ruling correct.

[2] As supporting appellant's position, our attention is called to several decisions of the supreme court of this state, to wit: *Curtin* v. *Salmon etc. Co.*, 130 Cal. 345, [80 Am. St. Rep. 132, [62 Pac. 552]; *Pacific Bank* v. *Stone*, 121 Cal. 202, [53 Pac. 634]; *Blood* v. *La Serena etc. Co.*, 113 Cal. 221, [41 Pac. 1017, 45 Pac. 252]; *Salfield* v. *Sutter etc. Co.*, 94 Cal. 546, [29 Pac. 1105], and *Alta Silver M. Co.* v. *Alta Placer M. Co.*, 78 Cal. 629, [21 Pac. 373]; but we think none of these in point here. So far as applicable to the case at bar, section 1624 of the Civil Code reads as follows: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent: . . . 6. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission." We think no discussion is necessary to bring conviction that plaintiffs' exhibit No. 1 is at least a "memorandum in writing" such as will bring it within the purview of this section. It seems to have been the uniform holding of the supreme and appellate courts of this state that this section does not require any formal contract. All that is necessary is that the fact of employment be expressed in writing, signed by the party to be charged, or by his agent. And the decisions of the supreme court of this state, as well as of this court, are in accord with the general rule on the subject in this country and England.

The question, therefore, with which we are confronted here may be put as follows: "Is plaintiff's exhibit No. 1 the contract of the corporation?" We have already stated that plaintiff has established, *prima facie*, that it was. Supplementing this, a witness offered by defendant in its own behalf—Mr. W. P. Cunningham—in response to the very first question asked, testified that he was the president of

the defendant corporation, and, in response to the second question, answered that he had been such "from its organization." In addition to this, we find in the record of the minutes of the board of directors of the defendant corporation, under date of June 12, 1915, that the following resolution was unanimously adopted: "Resolved, that whereas Ralph Arnold has acted in the matter of sale and transfer of the La Belle Oil Company's property as special representative in a special agreement with W. P. Cunningham and W. P. Thompson, he should receive a commission of five per cent (5%) on such deal as when paid to the La Belle Oil Company; therefore, be it resolved that the president and secretary are authorized to issue the company's check and pay the said Ralph Arnold five per cent on such amount as the La Belle Oil Company received from the California Counties Oil Company as and when received." The cases cited·by appellant as supporting the contention that the exhibit in question is not the "contract" of the defendant corporation, as we have already intimated, are not in point, particularly in this: that when section 1624, *supra*, is construed with and in the light of sections 2309 and 2310 of the Civil Code —requiring an agent's authority to execute a contract in writing to be itself in writing—it does not, we think, apply to the executive officers of a corporation. "It has never been the practice to require powers of attorney to confer authority upon such agents. We think the statute was intended to apply to agents proper; that is, persons who were not officers of the corporation. The executive officer of a corporation is something more than an agent. He is the representative of the corporation itself. It was early decided that directors, though they are only agents of the corporation, are exempt from the rule which requires the authority of an agent to be in writing in order to vest him with power to execute a deed." (*McCartney* v. *Clover etc. Co.*, 232 Fed. 697, [1 A. L. R. 1127, 146 C. C. A. 623].) In the case just cited it is shown that "there are numerous authorities in which deeds and mortgages executed on behalf of corporations by executive officers without any resolution of the board or any authority in writing have been sustained." From this we think it must be obvious that plaintiff's exhibit No. 1 was the act of the corporation, irrespective of the fact that the name of the secretary, actual or

acting, might not have been appended, or the corporate seal attached thereto. [3] We think, too, that even were the foregoing condition a prerequisite to the execution of an instrument such as is before us, a showing that a particular person, although not the regularly elected, qualified, or acting secretary, but appointed by the directors to act in the latter's absence, executed such instrument in such capacity, would be a sufficient compliance with the requirement referred to. Therefore, even though such prerequisite authorization be essential—which, as we have seen, is not—and it were held that such authority was not given in the first instance, still, under section 2310, *supra,* the resolution which we have quoted is, in our opinion, a complete ratification of the action of the corporation's officers, as already set forth, and as such there can be no question but that the exhibit before us is the ''contract'' or ''memorandum in writing'' conferring authority to plaintiff to act on behalf of the corporation for the purposes set forth therein.

There is no attempt on the part of plaintiff to recover anything on the theory of *quantum meruit* or implied contract to pay for benefits. He is claiming under and by virtue of the specific terms and provisions of plaintiff's exhibit No. 1. By the terms of said exhibit it will be seen that plaintiff was authorized ''to offer for sale . . . 80 acres, more or less, at $4000 per acre, on such terms and conditions as we . . . may eventually agree upon.'' [4] Plaintiff procured a purchaser, not at $4,000 per acre, or a total of $320,000, but for the total sum of $300,000—as will appear from plaintiff's exhibit No. 2. This was accepted by the defendant corporation on April 9, 1912, which entered into the agreement as set forth in plaintiff's exhibit 2 with the purchaser therein mentioned, viz., the California Counties Oil Company, a corporation, under which agreement the latter went into possession and did work upon the property. When this was done, plaintiff was entitled to the compensation agreed upon, according to the terms of plaintiff's exhibit No. 1. (*Brown* v. *Mason,* 155 Cal. 155, [21 L. R. A. (N. S.) 328, 99 Pac. 867]; *Boland* v. *Ashurst Oil etc. Co.,* 145 Cal. 405, [78 Pac. 871]; *Levy* v. *Wolf,* 2 Cal. App. 491, [84 Pac. 313]; *Justy* v. *Erro,* 16 Cal. App. 519, [117 Pac. 575]; *McMillan* v. *Beves,* 147 Fed. 218, [77 C. C. A. 444].)

[5] It is contended by appellant that the said California Counties Oil Company abandoned the latter contract. The evidence here does not support this contention. But it does appear that this contract or agreement was modified by mutual consent of the parties thereto on the twenty-eighth day of November, 1916, by which modification it is provided, among other things, that "it is hereby understood and agreed by all the parties hereto that the intent and purpose of this agreement is to cancel and set aside the agreement of April 9, 1912. . . . Should the said party of the second part [the California Counties Oil Company] fail to make the said payment . . . within ten days . . . then this agreement shall be of no effect, and shall immediately become null and void, and shall in nowise affect the said agreement of April 9, 1912." By this modification the price originally agreed to be paid—$300,000—was reduced to and fixed at the sum of $187,294.19. Of this amount the purchaser, the California Counties Oil Company, had paid to the defendant corporation, before the commencement of this action, the whole thereof, except the sum of $6,000, and said defendant had paid the plaintiff a commission amounting to $4,752.20, or five per cent on the sum of $95,045.47. Thereafter, and before the commencement of this action, the said California Counties Oil Company paid said defendant the further sum of $86,248.72, under and by virtue of the contract of April 9, 1912, as modified as aforesaid. No commission on this amount, or any portion of it, has ever been paid to plaintiff.

It is maintained by appellant that respondent was not entitled to commission on payments made to it under the said modification of plaintiff's exhibit No. 2, because "there is absolutely no testimony to show that respondent had anything to do with the execution of plaintiff's exhibit No. 3 [the modification agreement]." There is no merit in this contention. There is no reason shown why respondent should have had anything to do with it. As we have already seen, he was entitled to his compensation under plaintiff's exhibit No. 1, and according to the terms thereof. No subsequent agreement or modification of the original agreement between the vendee and the vendor therein could affect plaintiff's rights. Were it otherwise, the bars would be all down, and every agent who had rendered valuable service might, by such legerdemain as suggested here, be defrauded

not only out of a portion but out of the whole of the compensation agreed to be paid to him for procuring a purchaser of property.

By the terms of plaintiff's exhibit No. 1 plaintiff was to receive his said commission "in the manner as and when paid to us"—defendant. This is but another way of saying: "You are not to receive your five per cent on the whole of the purchase price when the deal is closed, but as fast as the purchaser pays in to us we will deduct the commission from such payment and remit to you." Indeed, this is all plaintiff contends for. The construction placed upon this phrase by defendant evidently is that in reality plaintiff was entitled to nothing until the full purchase price was paid, but that notwithstanding this the defendant had paid plaintiff the sum of $4,752.20, although under no legal obligation so to do. With the facts before us we are unable to accede to any such construction. It is conceded by defendant that the sum of $86,248.72 has actually been paid to it on account of the sale made originally to the purchaser who was brought to it by plaintiff, and that it has paid plaintiff no commission thereon. He is entitled to it, as found by the learned trial judge.

[6] It is next urged by appellant that "the judgment of the lower court includes commission on the sum of $6,000 payments due but not yet made under exhibit 3. To reiterate, respondent's contract calls for commissions only 'in the manner as and when' payments are received by appellant. It is but idle speculation to say that the purchaser is able, willing, and ready to pay. It may or may not become insolvent before it does so. The fact is that no payment has been made, and commission dependent thereon is not due. The judgment of the lower court must be modified at least in respect to this item." In answer to this respondent claims that said $6,000 became payable prior to the trial, "it being stipulated at the trial that the same would have been paid had it not been impounded by the attachment of the plaintiff herein. The matter is alleged in the supplemental complaint printed on page 15 and 16 of the supplement to appellant's opening brief. It was the understanding of the trial court and of ourselves that the stipulation of the defendant was that judgment might pass for the amount of the commission on this sum of $6,000 as

well as on the other amounts already paid if the plaintiff was entitled to judgment at all, and we do not understand why counsel raises this question now.'' This statement of counsel for respondent is neither answered nor denied. Such being the case, coupled with the fact that the court actually found for the plaintiff on this item, as already seen, it will be assumed that appellant concedes the truth of such statement, and that the finding was proper. (*Colkins* v. *Doolittle,* 45 Cal. App. 776, [188 Pac. 601].)

No other point raised by appellant need be considered.

Judgment affirmed.

Finlayson, P. J., and Sloane, J., concurred.