[Civ. No. 5257. Second Appellate District, Division One.—May 23, 1928.]

JACK SHOWERS, Respondent, v. H. MARY ROBER, Appellant.

Victor H. Kendrick and Wm. T. Kendrick for Appellant.

Lee R. Taylor and Richard Glass for Respondent.

WOOD (W. J.), J., *pro tem.*—Defendant appeals from a judgment in the sum of $1,250 rendered against her in an action in which plaintiff sued for a commission alleged to have been earned in negotiating the sale of defendant's real estate. On November 16, 1923, defendant gave to plaintiff written authorization to sell the land in question, in which it is stated: "I hereby constitute Jack Showers Sole Agents for the herein described property for 30 days and thereafter until notified in writing to the contrary." The price stated was $25,000, of which $16,300 was to be cash ("down"), and the balance to be covered by mortgage. On November 28, 1923, through the efforts of plaintiff, the South Park Land Company, a corporation, agreed to purchase defendant's property by an instrument which

was executed in the name of the corporation by C. M. Crawford, its general manager. By the instrument the purchaser agreed to pay the price fixed by defendant, of which $1,000 was then paid by check. The instrument provided: "The balance of the purchase price is to be paid 30 days from date hereof as follows, to-wit: ($4000) Four Thousand Dollars additional to the ($1000) One Thousand Dollar deposit to be paid into escrow and the balance when the title has had a report upon. Purchaser to be given possession within ninety (90) days hereof." Plaintiff then called upon defendant and informed her that he had sold the property. Mrs. Rober refused to talk to plaintiff, shut the door in his face and directed him to talk to her husband. Plaintiff then told Mr. Rober that he had sold the property to the South Park Land Company, but Mr. Rober said he "told his wife that she should not have signed any card or any listing like that, and that he would not have anything to do with it, and he would keep her from selling if he could." An escrow was started at the Citizens State Bank at Sawtelle, and the $1,000 deposited there. The cashier of the bank wrote a letter to Mrs. Rober concerning the escrow and the registration return card was returned to the bank bearing Mrs. Rober's signature by her daughter.

Two points are presented by appellant in arguing for a reversal of the judgment. ▋ It is first contended that it is not shown by the agreement of the South Park Land Company, or otherwise, that C. M. Crawford was authorized to bind the corporation. Since the findings are favorable to plaintiff the evidence must be considered in the light most favorable to him. The witness Crawford testified that the corporation was buying and selling real estate and that he had conducted practically all of the purchases and sales; that he was handling all of the affairs of the corporation. Witness Martin, the president of the South Park Land Company, testified that Crawford was the general manager of the corporation and that four of the five directors had met and discussed the proposed purchase and had "told Mr. Crawford to close the transaction on either of the terms he wanted to, either for cash or on the payment down and balance on the mortgage." Crawford was secretary of the corporation and a member of its board of directors. It was established that the South Park Land Company was

ready, able, and willing to complete the purchase. We are of the opinion that the agreement to purchase secured from the South Park Land Company was a binding agreement and that the finding of the trial court that Crawford was authorized to execute it is supported by the evidence. In 6 California Jurisprudence, page 1109, it is said: "In the case of a corporation organized for commercial purposes, its general manager, or whoever may be given immediate direction or control of its affairs, is its agent, empowered, unless expressly restricted to the performance of certain specified acts, to do, in respect to the management of the ordinary and usual affairs of the corporation, what the corporation itself could do within the scope of its authority." (*Betts* v. *Southern Cal. etc. Exchange*, 144 Cal. 402 [77 Pac. 993]; *Grummet* v. *Fresno Glazed Cement Pipe Co.*, 181 Cal. 509 [185 Pac. 388]; *Raftis* v. *McCloud River Lumber Co.*, 35 Cal. App. 397 [170 Pac. 176]; *Stevens* v. *Selma Fruit Co.*, 18 Cal. App. 242 [123 Pac. 212].) It was not necessary that Crawford's authority be evidenced by an instrument in writing. In *McCartney* v. *Clover Valley Land & Stock Co.*, 232 Fed. 697 [1 A. L. R. 1127]; it is said: "In our judgment section 2309 of the California Code, requiring an agent's authority to execute a contract in writing to be itself in writing does not apply to the executive officers of a corporation. It has never been the practice to require powers of attorney to confer authority upon such agents. We think the statute was intended to apply to agents proper; that is, persons who were not officers of the corporation. The executive officer of a corporation is something more than an agent. He is the representative of the corporation itself." (See, also, *Arnold* v. *La Belle Oil Co.*, 47 Cal. App. 290, 296 [190 Pac. 815].)

 Appellant argues in support of her second contention that the terms offered by the purchaser are not the same as those contained in the authorization to plaintiff. She points out that by the purchaser's agreement the purchase price was to be paid within thirty days, whereas the agent's authority called for part of the payment immediately ("down"); the purchaser was to be given possession within ninety days from said date instead of thirty days; that the evidence of title to purchaser from owner was to be guaranteed by a responsible title company at the expense of

owner; that if improvements were destroyed or materially damaged between date of agreement and consummation of sale, purchaser might at his option declare it null and void; that taxes for the then fiscal year ending June 30th next and insurance, rents, etc., were to be prorated; that the property was sold subject to the approval of owner; and that time was of the essence of the agreement. We fail to see any substantial difference between the terms set forth in the purchaser's agreement and the defendant's authorization to plaintiff. The latter is very brief and is silent on most of the points just enumerated. Some of the terms proposed would be supplied by law if not specifically set forth in the agreement. The purchaser's agreement contains merely the items which are generally found in instruments of this kind. One of the items, that extending the time for giving possession, is for the benefit of the seller. The allowance of thirty days before completing the cash payment cannot be held to be a fatal variance when it is considered that during this period the evidence of title would be produced and the delays customary to the handling of escrows would follow. Moreover, it was the duty of Mrs. Rober to object to any of these terms of the purchaser's agreement if they did not suit her, so that an adjustment could be made. In *California Land Security Co.* v. *Ritchie,* 40 Cal. App. 246 [180 Pac. 825], the court said: "It has been held, upon the soundest of reason, where a broker has negotiated the sale of real property to a purchaser able, ready, and willing to take and pay for the property, and any of the terms of the contract as to payment, or the abstract or deed are unsatisfactory to the intending vendor, the latter should object to them on that ground and not refuse absolutely to sell; and that where he fails to make such objection under such circumstances, he will be held liable to the broker negotiating the sale for his commissions if he refuses to accept the purchaser." Mrs. Rober not only failed to point out wherein any of the terms of the purchaser's agreement were unsatisfactory, but she precluded the possibilty of completing the sale by shutting the door in her agent's face and refusing to discuss the matter further. She is not now in position to deny his right to the commission earned. The record discloses that plaintiff procured a purchaser for the property and that

he did everything in his power to consummate the sale. He was prevented from doing so by the conduct of the defendant.

The judgment is affirmed.

Conrey, P. J., concurred.

Houser, J., dissented.