[Civ. No. 22729.   Second Dist., Div. Three.   July 18, 1958.]

W. ROSS CAMPBELL COMPANY (a Corporation), Respondent, v. JOSEPH PESKIN, Appellant.

226

Herbert Schwab for Appellant.

McCutchen, Black, Harnagel & Greene, G. William Shea and Ann E. Stodden for Respondent.

SHINN, P. J.—This is an appeal by defendant Peskin, owner of a commercial type building, from a judgment of $16,605 awarded plaintiff as a commission for providing a corporate client which was ready, able and willing to lease the building for 10 years at a rental of $4,585 per month. It is not questioned that plaintiff was employed by defendant as broker under an oral agreement or that if a commission was earned it would have amounted to the sum that was awarded.

The findings established all the facts necessary to a recovery by plaintiff. Most of them were contained in a written stipulation. The sole question is whether the evidence was insufficient to support one or more of the findings of the controlling facts. This, as we shall see, narrows down to the simple question whether plaintiff's client was willing to lease on defendant's terms. We may as well say here that the essential findings had ample support in the evidence.

Defendant's building was occupied by North American Aviation Company under a lease which ran to September 1, 1956. On October 5, 1955, American wrote a letter to defendant's authorized agent stating it did not desire to renew its lease and was willing to surrender possession at any time after January 1, 1956. Plaintiff's salesmen, Dickson and Harrison, aware of American's intention, offered their services to Peskin in finding a new tenant. Harrison procured a written offer of Monadnock Mills to lease the building and submitted it to Peskin. The stated term was 10 years from January 1, 1956, and the base rental $4,585 per month. On November 2, American wrote Peskin withdrawing its offer to vacate by January

1st, but stating that it would be willing to vacate by May 15th, or possibly sooner. November 7, Peskin in writing stated to plaintiff the terms upon which he would lease to Mills for a term commencing May 15th. In general, they were identical with the terms of Mills' offer. Both proposals stated as a necessary condition that North American would have to execute a firm agreement to surrender its lease and the premises by the date of the commencement of Mills' lease.

There were some differences in the two proposals, principally a change of the date of commencement of the term from January 1st to May 15th, to which Mills assented. The findings, express and implied, established that in all important respects in which the proposals differed there was later reconciliation and agreement. The terms of the two proposals were numerous and comprehensive. They were the subject of extensive negotiation between the attorneys for Mills and the attorney for Peskin. Mr. Shea and Mr. Doty represented Mills and Mr. Schwab represented Peskin in drafting a lease that would be satisfactory to their respective clients. Throughout the interval between November 22nd and December 27th, 1955, letters were exchanged between counsel, drafts of a lease were prepared and submitted, many changes were agreed upon, and on December 27th, the final draft executed by Mills in triplicate was submitted to Peskin through Mr. Schwab. Without objection to any of the terms of the lease, Mr. Schwab delivered them to Peskin who signed three duplicate originals. These were retained by Peskin and were never delivered to Mills.

Peskin testified that he signed the documents by mistake and that immediately thereafter upon discovering what he had done he cut off his signatures with the scissors. He did not inform his attorney that he had signed the documents by mistake and had removed his signatures; he did not tell his secretary that his signatures had been removed; the secretary informed Mr. Schwab that the leases had been executed and in all good faith Mr. Schwab informed Mr. Doty of that fact. Peskin did not make any objection to any of the terms of the lease but retained them in his possession. Long afterwards when he appeared to give his deposition in the present action, he produced the documents with his signatures removed and his attorney then learned that Peskin claimed that he had signed the duplicate leases by mistake.

Early in January 1956, Peskin contacted American through Mr. Pehrson, its real estate administrator and negotiated and

entered into a renewal of American's lease for a period of five years commencing September 1, 1956. In the meantime, the parties had fixed January 23, 1956, as the date when Peskin would furnish a firm agreement of American to vacate by May 15th. On January 23rd, Mr. Doty by telegram to Peskin demanded performance of the agreement and offered to pay to Peskin $20,632.50 as agreed advance rental. Peskin did not reply and Mills of necessity withdrew from the picture.

In attacking the finding that plaintiff produced a satisfactory tenant that was ready, able and willing to lease upon defendant's terms, Peskin advances three contentions: (1) Mills had demanded that at its option Peskin would be required to construct an additional building with 20,000 feet of ground floor space, and that he had never agreed to this condition. (2) Mills required that the lighting fixtures and a compressor which had been installed by American should remain in the building and be made available for use by Mills. Peskin says he did not agree to this condition. (3) It was understood that no lease could be made to Mills unless American agreed to surrender its lease by May 15, 1956. Peskin contends that American refused to surrender its lease or to vacate and that without his fault leasing the premises to Mills became impossible through the action of American.

These three contentions are utterly devoid of merit.

Mills' proposal would have required Peskin to add to the building at Mills' option 20,000 square feet of ground floor space to be constructed in accordance with Mills' specifications. Peskin's counter proposal stated that 20,000 feet of additional floor space would be constructed in accordance with specifications to be agreed upon by the parties. In the proposed lease, the addition was to be "of the same general type and quality of construction as the existing building," and should be not less than 10,000 nor more than 20,000 square feet of ground floor space. It is not contended that Peskin had any objection to the requirement stated in the lease that the building should in general conform to the construction of the existing building. It is clear that this provision of the lease was the result of negotiation and that it was satisfactory to all parties. The court impliedly so found that there was persuasive evidence that such was the fact. Defendant does not deny that he agreed to construct the additional building. He contends only that his proposal to construct it according to specifications to be agreed upon was too vague and indefinite to be enforceable. Aside from the fact that the

terms of his proposal were superseded by the provision in the lease, it is of no concern in the present action whether his obligation was enforceable. No one is seeking to enforce it, and plaintiff's right to a commission was not dependent upon the construction of the additional building. The court correctly determined that in respect of the new construction there was a meeting of the minds as expressed in the lease.

█ The next contention is that Peskin never agreed to make available to Mills the lighting fixtures and the compressor. This is contrary to the express provisions of both written offers. In Peskin's offer he agreed to ''acquire by purchase or otherwise'' the fixtures and make them available to Mills at the commencement of the lease. American had stated to Peskin the price of $18,500 and he made no objection to the price. Defendant's argument is that he could not have been required to purchase the fixtures because he had made no agreement with American to purchase them but, as we say, he ignores the fact that he made the agreement with Mills. There is no merit whatever in this argument.

█ The next contention is that Peskin was unable to make the lease with Mills because American refused to vacate the premises.

In Peskin's offer of November 7th in reply to Mills' proposal he stated: ''The lease is to commence on or about May 15, 1956, or sooner if the lessor can give possession sooner. . . . Upon the acceptance of this proposal and the execution of a lease between the undersigned and Monadnoc Mills, *an agreement of termination will be entered into between the undersigned and the present tenant.* It must be understood, however, that in the event the present tenant withdraws its offer to terminate its existing lease and to surrender the premises as of May 15, 1956, for any reason whatsoever, then this offer and any agreements between the undersigned and Monadnoc Mills shall be void and of no effect. *As soon as this offer is accepted by and binding upon Monadnoc Mills, the undersigned will attempt to secure a binding agreement of termination and surrender from his present tenant and upon securing such agreement, this proposal and acceptance hereof shall be in full force and effect.''* (Emphasis added.)

The court found: ''Said lease called for certain obligations to be performed solely by defendant. Defendant was at all times able to perform his obligation under and pursuant to said lease, but failed to do so, and on or about January 19, 1956, defendant repudiated said lease and refused to perform

thereunder." The finding means that Peskin was able to procure from American a firm agreement to surrender its lease and possession by May 15th. Oddly enough, the briefs made no mention of this finding, nor of the evidence upon which it was based, although plaintiff does assert generally that Peskin was required to act in good faith.

Peskin's promise that he would try to get a firm agreement from American that it would vacate by May 15th bound him to make an earnest and good faith effort to obtain the agreement. It is evident that he did not know that his promise imposed upon him the duty to act in good faith. He made no effort whatever to obtain American's agreement to vacate the premises and he argues that he had no duty to even ask for it. There was conclusive evidence that he repudiated his agreement with Mills and acted in utter bad faith. It is evident that "good faith" was not in his vocabulary or his conception of proper business methods. ■ As applicable in the present case good faith requires that an owner who has engaged a broker to find a purchaser or lessee for his property has a duty to act in good faith and not to intentionally discourage, embarrass or prevent the accomplishment of the proposed transaction. (*Coulter* v. *Howard,* 203 Cal. 17, 23 [262 P. 751].)

■ It will appear from a brief statement of defendant's testimony that he alone was responsible for American's failure to surrender its lease. Shortly after he received the lease he contacted Mr. Pehrson, American's real estate administrator. He testified that he told Pehrson that he had no deal with Mills; the proposition was absolutely unacceptable to him; he was through with them; the property was available for lease and that North American came first. In writing, he released American from its offer to surrender its lease and he entered into a new lease with American for a five-year term. He could have had a firm agreement from American to surrender its lease if he had asked for it. And yet in the face of all this, Peskin argues that American refused to vacate the premises and that since it was understood that American must surrender its lease or there could be no lease to Mills, plaintiff did not procure a prospective tenant who was willing and able to meet his terms. The contention is little short of absurd.

■ We come to a contention of defendant not previously mentioned. In his letter of November 7th enclosing Peskin's proposal, Mr. Schwab stated, as requested by Peskin: "I am handing you herewith a written proposal for a lease between

the undersigned and Monad*noc* Mills. It is understood that if in the event for any reason whatsoever, it is impossible to consu*mate* such lease, I shall not be liable to you for any commissions.'' It is argued that this proposal superseded the oral commission agreement and that no commission was earned because the lease transaction was not consummated.

Despite the testimony of Peskin the court found that he had executed the lease with full knowledge of its terms. Defendant contends that the finding is unsupported by the evidence. We do not believe there was a delivery of the lease or an intention to deliver it. Peskin had to obtain American's agreement to vacate and deliver it with the lease before the deal could be closed with Mills and he could get the check that was awaiting him. His conduct clearly indicated, and the court would have been justified in believing, that he intended to hold onto the Mills lease until he had had an opportunity to get a more satisfactory deal with American, and that he removed his signatures when that had been accomplished. But the finding of execution is not an essential one. The fact that it has insufficient support in the evidence avails defendant nothing. Execution was not necessary in order for plaintiff to earn its commission. Plaintiff's duty had been fully performed when it produced a satisfactory tenant willing to lease on Peskin's terms. (*Woodbridge Realty* v. *Plymouth Dev. Corp.*, 130 Cal.App.2d 270 [278 P.2d 713].) There are several reasons why it is immaterial whether Peskin executed the lease. In the first place plaintiff had already produced Mills' offer to lease the building; defendant had negotiated with Mills and the terms of a lease had been agreed upon. Plaintiff was not required to do more than this. Peskin could not unilaterally make a new contract with plaintiff. In the second place, failure of consummation of the lease was due to the fault of defendant. He would owe plaintiff the commission, even if it was to be paid only upon consummation of the lease. (*Collins* v. *Vickter Manor, Inc.*, 47 Cal.2d 875 [306 P.2d 783].)

Upon the facts found, which were amply supported by the evidence, plaintiff's right to a judgment for a commission was clearly established.

The judgment is affirmed.

Wood (Parker), J., and Nourse, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.