[Civ. No. 6873.   Fourth Dist.   Nov. 8, 1962.]

CHARLES W. TURNER et al., Plaintiffs and Appellants, v. WALDRON REALTY et al., Defendants and Respondents.

Murphy & Donahue, Arthur J. Donahue and M. S. Bernard for Plaintiffs and Appellants.

H. Walter Steiner for Defendants and Respondents.

COUGHLIN, J.—The issues in this matter arise out of a real estate broker's listing agreement; the rendition of services in response thereto; and his claim for a commission.

On April 4, 1959, Mr. and Mrs. Turner, who are the plaintiffs, cross-defendants and appellants herein, listed the subject property for sale with F. P. Waldron, a real estate broker doing business as Waldron Realty, and employing W. W. Gaspard, a real estate salesman, both of whom are the defendants, cross-complainants and respondents herein. Waldron's only participation in the transaction is through Gaspard. On the aforesaid date, the Turners owned three adjoining parcels of property totaling approximately 47 acres; listed with Waldron the subject property which is a parcel approximating 7½ acres; and, by separate agreement, also listed with him the whole 47 acres. The listing involved in this case was in writing; covered the period from April 4th to April 15th; related to the 7½-acre parcel; authorized the broker to sell the same for $88,000 on "Terms: Submit"; and provided for a commission of 5 per cent "of the selling price."

Thereupon the broker obtained a prospective buyer named Fether who, on April 14th, submitted an offer in writing to purchase the property for $9,800 per acre, payment to be made in cash on close of escrow; described the parcel as having a frontage of "320' on Hobart Street"; related that he intended to develop "the property into approximately 25 lots and a variance for triplex usage"; agreed to pay for all expenses incurred in obtaining such a variance; provided that "Upon securing the variance the buyer and seller will enter . . . a 60 day escrow"; and declared that a $1,000 check securing the offer, to be placed in escrow, was held by the Tustin Land and Cattle Co., a real estate brokerage firm, in its trust account.

The Turners did not accept the offer as presented; revised it by causing insertions and deletions to be made in the writing submitted to them; in this manner added to the description of the property by referring to it as "the 7 + acres purchased from Ed Hall"; increased the price to $10,300 per acre with a 30-day escrow; and attached their signature, indicating acceptance of the offer as revised. Fether approved the revision. In addition, both parties, by a separate instrument in

writing "agreed that upon successful completion of the escrow" in question "a real estate commission based on 5% of the selling price will be paid to Waldron Realty Co." and an assisting broker. The latter thereafter assigned his rights in this agreement to Waldron.

On June 9, 1959, proceedings were instituted to effect the triplex zoning variance referred to in the purchase agreement. The extent of these proceedings, the various steps taken, what transpired in the course thereof, and the sequence of events, do not clearly appear from the record before us, which is presented by an engrossed statement on appeal augmented by the exhibits introduced at the trial. However, the following facts are supported by substantial evidence, and are stated in accord with the rule requiring acceptance of that version thereof most favorable to the judgment when the sufficiency of the evidence to support the same is attacked on appeal. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12].) Fether was informed that a variance for triplex purposes would require a 380-foot frontage on Hobart Street, which would necessitate the acquisition of an additional 2 acres from the adjoining property. He requested the broker to arrange for the purchase of this additional acreage. The Turners orally agreed to such a purchase, the price per acre remaining the same. Thereupon a variance application was filed with the planning commission covering the 7-acre parcel described in the original written agreement, and the additional 2-acre parcel orally agreed upon; contained a legal description of these two parcels; and was verified by Mr. Turner, under oath, on behalf of the owners of the property. A dispute arose as to whether the application sponsored by the Turners was one to obtain a duplex variance for 7 acres or a triplex variance for 9 acres. The Turners, by letter to the planning commission, at first revoked all variance applications made by them but subsequently indicated their objection thereto was directed only to the use thereof to obtain a duplex variance. On July 8, Mr. Turner directed a letter to Fether which reflects this dispute, and in which it was stated:

"I hereby rescind the said agreement dated April 14, 1959 and any and all agreements or escrow instructions heretofore signed by me with respect to said property. In addition, I am notifying the Santa Ana Planning Commission that I am revoking the application for variance which was heretofore signed by me and which is presently pending. . . .

". . . . . . . . . . . . . .

"It is also interesting to note that our agreement as aforesaid concerned property consisting of seven acres while the escrow instructions as prepared and dated June 11, 1959, and the variance application concerned property consisting of nine acres which was not in our agreement."

Six days later Fether caused a letter to be sent to the Turners in which he asserted his reliance upon the written agreement to support his right to purchase the 7½ acres and upon the oral negotiations between them to support his right to purchase the additional 2 acres, and also asserted his intention to enforce the former even though he was unable to enforce the latter. In the meantime a man named Griffith negotiated with the Turners for the purchase of that part of their property not sold to Fether, and these negotiations also included the probability of purchasing the whole property. On August 20th, the Turners and Fether directed a communication to the planning commission which, in substance, advised that the application theretofore filed, should be considered as the application of both of them; and requested a favorable consideration thereof; but declared that the Turners would not consent to any amendment thereof so as to permit the construction of duplex units. As heretofore noted, both the 7½-acre and the 2-acre parcels were included in this application. On the same day, i.e., August 20th, the Turners advised Fether, by two letters, that they in no way intended to violate or breach their agreement of April 14th and would "cooperate fully and perform" that agreement. On August 24th the planning commission voted approval of the triplex variance and on September 8th the city council granted the same. Thereafter, Fether agreed to go into escrow to consummate his purchase of the two parcels covered by the variance, but the Turners refused to do so stating that they would abide by the agreement of April 14th for the purchase of the 7½-acre parcel and also stating that they had sold the balance of the property to Griffith. By escrow instructions dated August 25th, which was the day after the planning commission had approved the triplex application, the Turners and Griffith had agreed to a sale and purchase of the whole 47 acres at $11,000 per acre; amendments thereto were made from time to time, but eventually the sale therein agreed upon was consummated; and on October 30th Griffith became owner of the entire parcel. Before consummation of this sale Fether had brought an action against the Turners to enforce the agreement to sell him the 9 acres which he wished to purchase; prayed for specific performance, or in the alternative, for damages; subsequently

compromised his claim for $7,000; and thereupon dismissed the action. The triplex variance was scheduled to expire on March 8, 1960, because construction had not been commenced. The Turners requested a 90-day extension thereof; and this request was granted.

The instant action was commenced by the Turners, who alleged they had been injured by the unauthorized action of Waldron and Gaspard in negotiating the sale of the 2-acre parcel, and sought recovery of damages on account thereof. The latter cross-complained for their commission. The trial court found in favor of Waldron and Gaspard on all issues; that they should recover $4,892.50 as a commission based on a prospective 9½ acre sale; and that the Turners should recover nothing on their complaint. Judgment was entered accordingly. The plaintiffs appeal from the judgment; make no contention respecting that part thereof decreeing that they should take nothing on their complaint; contend that the award of a commission should be reversed; and list the following issues on appeal, i.e.:

"1. Is the instrument of April 14, 1959, sufficiently definite so that both the buyer and seller had a valid and enforceable agreement?

"2. Are the respondents entitled to a commission on the entire nine acre parcel?

"3. Are the respondents entitled to a commission on the seven acre parcel?"

Both sides devote extensive consideration to the issues as to whether the written agreement of April 14, 1959 bound the Turners to sell Fether 9½ acres; whether the statute of frauds rendered the same unenforceable; and whether the Turners were estopped to assert that statute. As will be noted hereinafter, these issues are immaterial to the case at hand. At this juncture, however, it should be noted that the instant action is not one between the buyer and the sellers where such issues properly might be advanced.

The cross-complaint for a commission alleges, among other things, the execution of the listing agreement covering the 7½-acre parcel; the procurement of a buyer for the purchase thereof upon terms acceptable to the owner; and the execution of a written contract between the parties upon these terms. The court found these allegations to be true. They are supported by the evidence and, under the law, entitle the broker to a commission based on the agreeed purchase price for the 7½-acre parcel.

A broker is entitled to a commission under a listing agreement for the sale of real property which, as in the instant case, does not completely specify the exact terms of sale, when he has procured a purchaser pursuant thereto ready, willing and able to buy on terms acceptable to his employer (*Collins* v. *Vickter Manor, Inc.*, 47 Cal.2d 875, 880 [306 P.2d 783]; *W. Ross Campbell Co.* v. *Peskin*, 162 Cal.App.2d 225, 231 [328 P.2d 27]; *Cochran* v. *Ellsworth*, 126 Cal.App.2d 429, 438 [272 P.2d 904]; *Lawrence Block Co.* v. *Palston*, 123 Cal.App. 2d 300, 305 [266 P.2d 856]), even though such terms differ from those specified, providing his services are the procuring cause which effected the proposed sale on the terms actually agreed upon. (*Palmtag* v. *Danielson*, 30 Cal.2d 517, 520 [183 P.2d 265]—Difference in price; *Twogood* v. *Monnette*, 191 Cal. 103, 108 [215 P. 542]; *Cochran* v. *Ellsworth, supra*, 126 Cal.App.2d 429, 439; *Baker* v. *Curtis*, 105 Cal.App.2d 663, 670 [234 P.2d 153]; *Pray* v. *Anthony*, 96 Cal.App. 772, 779 [274 P. 1024]; *Bail* v. *Glantz*, 78 Cal.App. 49, 56 [248 P. 258]; *Merzoian* v. *Papazian*, 53 Cal.App. 112, 115 [199 P. 826]; *Arnold* v. *La Belle Oil Co.*, 47 Cal.App. 290, 298 [190 P. 815]—Subsequent modification; *Wood & Tatum Co.* v. *Basler*, 37 Cal.App. 381, 384 [173 P. 1109].) The broker has procured a purchaser pursuant to such a listing agreement when, through his efforts, there is a meeting of the minds upon the terms of a proposed sale between the employer, as the prospective seller, and the person procured by the broker, as the prospective buyer. (*Keeler* v. *Glendon*, 124 Cal. App.2d 634, 638 [268 P.2d 189]; *Lawrence Block Co.* v. *Palston, supra*, 123 Cal.App.2d 300, 308; *Love* v. *Gulyas*, 87 Cal.App.2d 608, 618 [197 P.2d 405].) The mere fact that the agreement so reached is not evidenced by a binding contract, providing the buyer is willing to enter into such, or that the proposed sale is not completed, does not foreclose recovery of the broker's commission, unless the listing agreement expressly or by established implication provides otherwise. (*Collins* v. *Vickter Manor, Inc., supra*, 47 Cal.2d 875, 880-882; *Jauman* v. *McCusick*, 166 Cal. 517, 522 [137 P. 254]; *Cochran* v. *Ellsworth, supra*, 126 Cal.App.2d 429, 438.) In this regard the Supreme Court, in *Twogood* v. *Monnette, supra*, 191 Cal. 103, 107, stated:

"It is also established law in this state that a written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing, and able to

purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price.''

On the other hand, the execution of such a contract is conclusive proof that the owner was satisfied as to the qualifications of the purchaser and his ability to perform. (*McNamara* v. *Steckman,* 202 Cal. 569, 572 [262 P. 297]; *Jauman* v. *McCusick,* 166 Cal. 517, 522 [137 P. 254]; *Deeble* v. *Stearns,* 82 Cal.App.2d 296, 299 [186 P.2d 173].)

In the instant case there was a listing agreement employing the broker to obtain a purchaser for the 7½-acre parcel at $88,000 on terms to be agreed upon. The broker procured a prospective buyer. Thereupon he and the owner agreed upon a purchase price of $10,300 per acre payable in cash through a 30-day escrow to be commenced after a designated variance had been obtained. A written agreement to that effect was executed by the parties. The provision therein indicating the purchaser's intention to apply for a 25-lot triplex variance is not a term of the agreement, but an expression of the purchaser's intended use of the property and a measure of the time element preceding the consummation of the escrow. Thereafter, the owners participated in an effort to obtain the triplex variance and to this end orally promised to sell the purchaser an additional two acres of land. Subsequently, the owners attempted to rescind their agreement; indicated that they had agreed to sell only the 7½-acre parcel; voiced their objection to a duplex variance which apparently could have been obtained for that parcel; but thereafter, in substance, withdrew their attempted rescission; expressed their intention to cooperate in obtaining a triplex variance; and requested the planning commission to grant the previously filed application which covered both the 7½-acre and the 2-acre parcels. In the meantime, the buyer had advised the owner that he intended to proceed with the sale as to the 7½-acre parcel even though he was unable to acquire the additional 2 acres. The variance was granted. The buyer offered to proceed to escrow, causing the preparation of escrow instructions to effect compliance with both the written and the oral agreements. The owners refused to proceed, contending that they were not bound to sell the additional 2 acres,

although indicating their intention to proceed with the 7½-acre sale, but the evidence indicates that they previously had agreed to sell the whole of their property to another party. Thereupon the buyer brought an action to enforce performance of both agreements which resulted in a compromise, the payment of damages to him, and dismissal of the action. Under the principles heretofore considered, these facts fully support the determination of the trial court that the broker procured a prospective purchaser, ready, willing, and able to buy the 7½-acre parcel upon terms proposed by the owner and agreed to by the parties.

Even though it be assumed that the terms of sale agreed upon by the parties included not only a sale of 7½ acres at $10,300 per acre, payable in cash, but also the procurement of a zoning variance which required performance of an oral agreement to sell an additional 2 acres, the evidence supports a finding that the parties had entered into such an oral agreement, and a conclusion that there was a meeting of the minds between the prospective buyer and the prospective sellers respecting the terms of sale was proper. The fact that the oral agreement was unenforceable, as contended by the owner and which is assumed only for the purpose of this decision, is not a defense to their obligation under the listing contract. (*Collins* v. *Vickter Manor, Inc., supra,* 47 Cal.2d 875, 882; *W. Ross Campbell Co.* v. *Peskin, supra,* 162 Cal.App.2d 225, 228-229.) It was a term of sale agreed upon by the owners as well as by the buyer; and there was a meeting of their minds on this and all other terms of the sale; thus, the prospective buyer procured by the broker was one ready, able, and willing to purchase on terms acceptable to the owners; and the broker had complied with the requirements of his contract and the law in the premises.

This conclusion renders unnecessary any consideration of the contentions respecting the enforceability of the oral contract; its susceptibility to avoidance under the statute of frauds; or the claim of estoppel upon the owners to assert that statute.

Furthermore, affirmance of the judgment herein may be predicated upon the agreement executed simultaneously with the contract to purchase and sell wherein the Turners promised to pay a commission "upon successful completion of the escrow" between the parties. The trial court was entitled to conclude therefrom that Waldron had performed the duties of his employment and earned his commission by

procuring a purchaser ready, willing and able to purchase on the terms specified in the written contract executed by the Turners and Fether. (*Collins* v. *Vickter Manor, Inc., supra,* 47 Cal.2d 875, 881.) This contract provided for the sale and purchase of 7½ acres. Fether wanted to subdivide the property into 25 lots zoned for triplex dwelling units. Because of its size, a zoning variance to permit such use could not be obtained. However, a duplex variance could have been obtained. Fether would have completed his purchase on this basis. The contract between him and the Turners did not require the obtaining of a triplex variance as a condition precedent to purchase. Nevertheless, the Turners were desirous of having the property zoned for triplex unit use. To accomplish this purpose they agreed to sell Fether an additional 2 acres to meet the zoning requirements; applied for a triplex variance for the two parcels, i.e., the 7½ acres covered by the written contract and the 2 acres covered by the oral agreement; objected to the granting of a duplex variance; wrongfully attempted to rescind their contract when they learned that Fether might subdivide the property for duplex unit purposes; and thereafter, along with Fether, reinstated their application for a triplex variance.

■ "The law requires of the vendor good faith and the doing of no intentional act to discourage, embarrass, or prevent the completion of the purchase." (*Coulter* v. *Howard,* 203 Cal. 17, 23 [262 P. 751].)

In due course a triplex variance was granted. The next day the Turners sold the property to another person. Fether offered to commence an escrow as agreed, but his offer was rejected. Both he and the broker had done everything required of them under the written contract. When Fether attempted to enforce the Turner's promise to sell, they compromised his claims against them; thus prevented consummation of the sales; and, in substance, effected a cancellation of both agreements. ■ Under these circumstances, although the promise to pay a commission contained in the writing of April 14th, appeared to be conditioned upon "successful completion" of the escrow provided for in the written contract to purchase and sell, the Turners may not urge noncompletion thereof to defeat recovery of the agreed commission, because such noncompletion was brought about by their refusal to proceed. (*Collins* v. *Vickter Manor, Inc., supra,* 47 Cal.2d 875, 881; *Coulter* v. *Howard, supra,* 203 Cal. 17, 23, 26; *W. Ross Campbell Co.* v. *Preskin, supra,* 162 Cal.

App.2d 225, 231; *Swanson* v. *Thurber,* 132 Cal.App.2d 171, 177 [281 P.2d 642]; *Woodbridge Realty* v. *Plymouth Dev. Corp.,* 130 Cal.App.2d 270, 280 [278 P.2d 713]; *Cochran* v. *Ellsworth, supra,* 126 Cal.App.2d 429, 438.)

The plaintiffs also contend that the defendant is not entitled to a commission because the transaction as defined by the written contract relates to a parcel extending 320 feet along Hobart Street instead of 270 feet, which appears to be the street frontage of the "Ed Hall" property, and as finally agreed upon by the parties involved the sale of 9½ acres instead of 7½ acres. If the purchase of the additional property was a part of the transaction involved in the written contract to purchase the 7½ acres, it became such by virtue of the agreement made by the plaintiffs and they may not complain of this fact. In support of their position the plaintiffs cite *Cono* v. *Keil,* 18 Cal.App. 675 [124 P. 548], and *Boyd* v. *Big Three Ranch Co.,* 22 Cal.App. 108 [133 P. 623]. These cases support denial of a commission where the broker sold only a part of the property listed; obviously differ from the case at bar where the broker procured a purchaser for all of the property listed and, in addition, two acres of other property; and are not controlling here.

On the other hand, there is no showing that the broker was employed to sell the additional 2-acre parcel. His listing agreement was confined to the 7½ acres later described in the contract between the owners and the buyer as the "Ed Hall" property, having a 320-foot frontage on Hobart Street. The simultaneously executed agreement to pay the two brokers a commission "upon successful completion of the escrow" by the Turners and Fether obviously referred to the escrow then under consideration which was concerned only with the 7½-acre parcel. Neither the listing agreement nor the agreement after sale authorized recovery by the broker for services rendered in connection with the proposed 2-acre sale; the terms thereof did not cover such services; he had no written contract authorizing the same; and he may not recover therefor. (*Frederick* v. *Curtright,* 137 Cal.App.2d 610, 614 [290 P.2d 875]; *Augustine* v. *Trucco,* 124 Cal.App.2d 229, 237 [268 P.2d 780]; *Herzog* v. *Blatt,* 80 Cal.App.2d 340, 343 [180 P.2d 30].)

The 7½-acre parcel sale price, at $10,300 per acre, was $77,250; the 5 per cent commission thereon was $3,862.50; and the judgment should be modified by reducing the principal payable thereunder from $4,892.50 to $3,862.50.

The judgment is modified by reducing the principal sum thereof from $4,892.50 to $3,862.50, and by allowing interest as therein prescribed on the latter amount only. As so modified, the judgment is affirmed. Appellants will recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.