[Civ. No. 23632.   First Dist., Div. Two.   July 26, 1967.]

EVERETT J. MATTHEWS, Plaintiff and Appellant, v. W. B. STARRITT et al., Defendants and Respondents.

Coughlin, Wyckoff, Parker & Paxton and John R. Coughlin for Plaintiff and Appellant.

Byers & Jacobs and Bruce M. Jacobs for Defendants and Respondents.

TAYLOR, J.—Plaintiff, Everett J. Matthews (hereafter Matthews), appeals from an adverse judgment in his action for declaratory relief against W. B. and Betty Starritt (hereafter Starritt), holding that he was not entitled to a real estate broker's commission under either the exclusive listing agreement or the deposit receipt. He contends that the trial court erred in construing the written agreements of the parties. We have concluded that there is no merit in this contention.

The record reveals the following: Matthews, a licensed real estate broker with 18 years of experience, was representing a buyer, Klauer, on the purchase of property next door to the

one-half acre parcel owned by Starritt in Hollister. It occurred to Matthews that Klauer might also be interested in the Starritt property. Matthews found out that Starritt was willing to sell their property for $75,000 or $79,000, and then asked Klauer if he would be interested. Klauer indicated that the $79,000 price was too high.

About a week later, Matthews again discussed the Starritt property with Klauer who then authorized him to convey his firm offer of $75,000. On representation by Matthews that Klauer was ready, willing and able with a firm offer, Starritt arranged to meet with Matthews to prepare and sign the papers on Klauer's terms on October 31, 1964. Prior to the preparation of the documents, Starritt informed Matthews that one of the tenants on the property, Richfield Oil Company (hereafter Richfield), had a 20-day option.

On October 31, 1964, Starritt signed a California Real Estate Association standard form exclusive listing agreement with Matthews for a seven-day period ending midnight, November 7, 1964. The agreement provided that the sale was subject to the existing leases and also subject to the refusal of the purchase price by Richfield within 20 days. The paragraph relating to the payment of the broker's commission is set forth in full below.[1] Thereafter, on the same day, Klauer signed a deposit receipt evidencing his offer of $75,000 on the property and requiring an acceptance in writing in seven days. The deposit receipt also provided that the sale was subject to the existing leases and the refusal of the purchase price by Richfield within 20 days.

Both of the clauses relating to Richfield's option were in Matthews' own wording and handwriting and were read carefully by Starritt. Matthews' right to a commission in the event that Richfield exercised its option was not discussed by the parties prior to or at the time of the execution of the agreements. Matthews delivered a signed copy of the deposit receipt to Starritt the same day and deposited Klauer's $5,000 check in his trustee account.

Thereafter, pursuant to their lease, Starritt informed Richfield of Klauer's offer. On November 19, 1964, Richfield exercised its option to purchase the property. After Starritt

---

[1]"I hereby agree to pay Broker as commission FIVE per cent of the selling price if said property is sold during the term thereof or any extension thereof by Broker or by me or by another broker or through any other source. If said property is withdrawn from sale, transferred, or leased *during the term hereof* or any extension thereof, I agree to pay Broker said per cent of the above listed price." (Italics supplied.)

informed Matthews of this fact, the matter of Matthews' right to a commission came up for the first time. Matthews asked: "Well, where does that leave me?" Starritt replied: "Everett, I don't know, but if you're entitled to a commission you'll get it; if you're not entitled to a commission, you won't get it." Matthews testified that Starritt indicated he would like to get out of paying the commission. Both agreed that the clauses relating to the Richfield option were inserted in both documents for the protection of Starritt.

Since there is no material conflict in the extrinsic evidence in this case, we must make an independent determination of the meaning of both the listing agreement and the deposit receipt (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]). In doing so, we are mindful of certain well established rules. ■ If the trial court's interpretation is a reasonable one, it should ·be accepted by this court (*Parsons* v. *Bristol Development Co., supra*). ■ Furthermore, in case of an ambiguity, the contract should be construed most strongly against the·party who drafted or supplied it (*Warshauer* v. *Bauer Constr. Co.,* 179 Cal.App.2d 44, 51 [3 Cal.Rptr. 570]; Civ. Code, § 1654). Thus, where a listing agreement is prepared by a broker, as in this case, any uncertainty in the provisions therein relating to the commission should be construed in favor of the seller (*Rivadell, Inc.* v. *Razo,* 215 Cal.App.2d 614, 624 [30 Cal.Rptr. 622]). With these well established rules in mind, we now consider the court's interpretation of the commission provisions.

■ The major contention on appeal is that the trial court erroneously interpreted the language "subject to . . .. refusal of the purchase price . . . by Richfield" in both agreements as a condition precedent to Matthews' right to receive the commission. "Subject to" means subordinate to (*Colonial Sav. & Loan Assn.* v. *Redwood Empire Title Co.,* 236 Cal.App. 2d 186, 191-192 [46 Cal.Rptr. 16]; *Cockerill* v. *Tobin,* 59 Cal.App. 112, 114 [209 P. 1022]), and is generally interpreted as a condition precedent (*Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 310 [266 P.2d 856]).

■ Matthews argues, however, that the language "subject to" was not used in the instant case in its usual sense but simply denoted the extent of the interest to be conveyed by Klauer. The fact that the reservation concerning the Richfield option was separately stated and was not included in ·the paragraph subjecting the sale to existing leases, is some indi-

cation that the option provision was considered by the parties as a condition precedent and not a mere limitation on the interest to be conveyed.

Furthermore, the additional provisions of both agreements support the court's construction. Both the listing agreement and deposit receipt expressly provide an expiration date seven days after the date of the execution of the agreements but both were made subject to Richfield's 20-day option. Thus, the parties did not provide a sufficient period of time to insure the exercise of the option during the operative period of their agreements, indicating that the option provision was considered a condition outside the agreements and that Richfield had to refuse to buy before the commission would become payable.

Matthews' argument that the second sentence of the paragraph relating to his commission (quoted above) obligated Starritt to pay a commission if the property was withdrawn from sale or transferred during the term of the agreement or any extension thereof, overlooks the fact that Richfield exercised its option on November 19, 1964, 12 days after the expiration date of both agreements, and there was no evidence of an extension of either agreement.

█ Finally, Matthews contends that he is entitled to recover his commission under the exclusive listing agreement alone, as he did secure a purchaser and his services were the procuring cause which effected the sale to Richfield. Plaintiff cites *Turner* v. *Waldron Realty*, 209 Cal.App.2d 376 [25 Cal.Rptr. 771], *Wesley N. Taylor Co.* v. *Russell*, 194 Cal.App. 2d 816 [15 Cal.Rptr. 357], and similar authorities, holding that a broker employed to sell real property has earned his commission when he has produced a purchaser who has been accepted by his principal and that the failure of either party to perform the contract is not material to the right of the broker to receive compensation from his principal. These cases have no application to the instant situation where the agreement to sell and, therefore, the broker's commission is expressly made conditional (*Edwards* v. *Billow*, 31 Cal.2d 350, 360 [188 P.2d 748]). Acceptance of a conditional deal procured and presented by the broker does not give him a right to commission unless and until the condition is performed (*Phillips* v. *Barton*, 207 Cal.App.2d 488, 494 [24 Cal.Rptr. 527]).

Nor can Matthews base a claim on the deposit receipt. The broker's right to a commission is dependent on the perform-

ance of the contract between his principal and the party produced by him (*Lawrence Block Co.* v. *Palston, supra*). As the trial court here indicated in its well-reasoned memorandum opinion, if Matthews had wished to protect his right to a commission in this situation, he should have expressly inserted an appropriate statement in both agreements that he was entitled to a commission even though Richfield exercised its option. We concur in the reasonable interpretation of the trial court.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.